(No. 38159.—

GRANITE CITY STEEL COMPANY, Appellee, *vs.* THE DEPARTMENT OF REVENUE *et al.*, Appellants.

*Opinion filed March 18, 1964.—Rehearing denied May 19, 1964.*

WILLIAM G. CLARK, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, RICHARD A. MICHAEL, EDWARD A. BERMAN, and A. ZOLA GROVES, Assistant Attorneys General, of counsel,) for appellants.

RANDALL ROBERTSON, of Granite City, and WILLIAM R. BASCOM and WILLIAM C. CONNETT IV, both of St. Louis,

Mo., (BRYAN, CAVE, McPHEETERS & McROBERTS, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In this administrative review action the circuit court of Madison County quashed a final assessment of use tax and penalties made by the Department of Revenue against the plaintiff, Granite City Steel Company, on certain out of state purchases of metallurgical coal and coke. The revenue is involved, and the Department has appealed directly to this court.

The plaintiff is engaged in the business of manufacturing pig iron and steel in Illinois. It produces pig iron by heating iron ore, coke and limestone in blast furnaces. The purpose of the limestone is to "flux off" the impurities in the iron ore. The coke performs two functions: first, it is burned to produce the heat necessary to melt the iron and induce the desired chemical reaction, and second, in the process of burning, carbon from the coke is infused into the iron. Carbon is an essential ingredient in finished pig iron. The plaintiff obtains some of the coke that it uses by purchasing metallurgical coal and converting it into coke in its own by-product coke ovens. In the process of conversion, the coal yields a number of volatile by-products, such as benzol, gas and napthalene, as well as coke. These volatile substances, and a very small amount of the coke, are sold. The great bulk of the coke thus produced is used by plaintiff in the production of pig iron. The plaintiff also purchases coke, and all of its purchased coke is used in manufacturing pig iron. The pig iron is either sold by the plaintiff as such, or is further refined and sold as steel.

The issue in this case involves the liability of the plaintiff for an assessment of use tax and penalties totaling $128,963.18 which was imposed on a portion of plaintiff's purchases of metallurgical coal and coke from out of state

sellers during the period July 1, 1956, to June 30, 1959. The Department concedes that the amount of coal and coke that was actually resold in some form, whether as volatile by-products, as coke, or as carbon in the finished pig iron, is not subject to the use tax. The dispute concerns the plaintiff's liability for the tax on that portion of coal and coke that is consumed in production processes, is not resold in any form and does not appear in the finished product. The assessment was based upon the company's production figures for the calendar year 1959, a typical year. These figures indicated that approximately 33.5 per cent of plaintiff's purchases of coal was resold either as volatile matter, coke or carbon in pig iron. Accordingly, the base for the Department's assessment on purchases of metallurgical coal was the total purchase price less 33.5 per cent. The assessment on purchases of coke was based on the total purchase price less 4 per cent, which percentage is the percentage by weight of carbon in the finished pig iron.

We are thus concerned with purchased products, part of which are used and consumed in the process of manufacture, and part of which are resold, either as by-products or as an ingredient in the finished product. With respect to such a purchase, it is the contention of the plaintiff, which the trial court sustained, that if any part of a purchased commodity is intended to and must necessarily be incorporated in an end product which is resold, the entire commodity is not taxable. And since in this case some part of the purchased coal and coke was incorporated in products that were resold, no tax is due. It is the contention of the Department that the statute excludes from taxation only that part of the purchased commodity that is resold as a by-product or becomes an ingredient in an end product that is resold. And since in this case the coke, whether purchased or converted from coal, performs both a "use function" by providing heat and a "resale function" by providing carbon which was incorporated into the finished product, the De-

partment contends that the part which was consumed in furnishing heat is taxable.

The Use Tax Act provides that "A tax is imposed upon the privilege of using in this State tangible personal property purchased at retail  *  *  *  from a retailer." (Ill. Rev. Stat. 1961, chap. 120, par. 439.3.) "Use" is basically defined as "the exercise by any person of any right or power over tangible personal property incident to the ownership of that property,  *  *  *." The statute, however, contains the following relevant qualification of that basic definition: " 'Use' shall not mean  *  *  *  the physical incorporation of tangible personal property, as an ingredient or constituent, into other tangible personal property (a) which is sold in the regular course of business or (b) which the person incorporating such ingredient or constituent therein has undertaken at the time of such purchase to cause to be transported in Interstate Commerce to destinations outside the State of Illinois." Ill. Rev. Sat. 1961, chap. 120, par. 439.2.

We have been referred to no decision that deals squarely with this situation and these contentions. Both parties rely upon Smith Oil and Refining Co. v. Department of Finance, 371 Ill. 405, which arose under the Retailers' Occupation Tax Act. There the question was the taxability of core oil sold to foundries for the purpose of making cores used in molding iron. The cores were composed of sand, and the core oil was added to bind the grains of sand together. Under high temperatures a small but undetermined amount of the core oil decomposed and was absorbed in the iron castings in the form of carbon. It was held that the sales of core oil measured a tax. The court pointed out that it was not shown that the core oil was used for the purpose of increasing the carbon content of the casting, and said: "Before a commodity can be said to have been resold as an ingredient of the finished product, it must be shown to have been used with the intention that it should become a part of

it, and not solely for some other and distinct purpose." (371 Ill. at 408.) The court also pointed out that the amount of carbon that became an ingredient of the iron castings was insignificant and could be regarded as *de minimis*. In the *Smith* case the court did not reach the issue now before us. The record in the present case makes it clear that it is intended and necessary that a part of the coke in question should be incorporated in the pig iron as carbon, and that it is also intended that most of the coke should be consumed in the process of supplying heat. In the *Smith* case, moreover, the question concerned the taxability of the entire amount of core oil sold, and no attempt was made to determine taxability on the basis of the particular uses to which the purchased property was put.

The plaintiff relies heavily upon *State* v. *Southern Kraft Corp.* 243 Ala. 223, 8 So. 2d 886. The statute there involved excluded from the use tax "sales at wholesale" which were defined as the purchase of property which "becomes an ingredient or component part" of property manufactured or compounded for sale. The finished product was Kraft paper and the question was the taxability of salt cake, sulphur and quick lime which were combined to make a cooking liquor in which wood chips were boiled. The process of boiling eliminated the rosin and other waste, leaving only the fiber which when washed became wood pulp. From this process only minute percentages of the salt cake, calcium and sulphur found their way into the end product in any one boiling. But after each boiling, through a recovery process, the cooking liquor was recovered and reused. It was urged by the taxpayer that the sodium, sulphur and a considerable portion of the quick lime "are never lost but by repeated processes all or the major portion of these materials ultimately become an ingredient or component part of the finished product." This case involved a factual situation much closer to the one now before us than did the *Smith* case, for it dealt with products that were used both for the

chemical results that they produced in the process of manufacture and also, according to the testimony, to supply essential ingredients in the finished products. The issue was not the same, however, for in the *Kraft* case the tax had been assessed upon the entire amount of the purchase price, upon the theory that taxability was determined by the "dominant purpose" of the taxpayer.

Decisions in other cases have turned upon specific statutory exclusions. For example, some states have provided exclusions for "fuel" used in the manufacture of goods for sale, (*Androscoggin Foundry Co.* v. *Johnson,* 147 Maine 452, 88 A.2d 158; for any material which "enters into the processing of" tangible personal property for sale, (*Bedford* v. *Colorado Fuel & Iron Corp.* 102 Colo. 538, 81 P.2d 752; for substances whose "primary purpose" is to create a chemical reaction in the manufacturing process, (*Pacific Northwest Alloys, Inc.* v. *State,* 49 Wash. 2d 702, 306 P.2d 197; and for materials "used directly in the fabricating, converting, or processing of tangible personal property * * * for resale." (*State* v. *Cherokee Brick & Tile Co.* 89 Ga. App. 235, 79 S.E.2d 322. Many of these statutory exclusions antedated the adoption of the Illinois use tax in 1955, and the most that can be said of the decisions is that they turned upon provisions that the General Assembly decided not to adopt.

Section 2 of the Use Tax Act first announces a broad definition of the term "use" as related to the ownership of property. It then states two artificial exclusions, the first of which is designed to avoid double taxation and the second to avoid conflict with the commerce clause of the United States constitution. (Ill. Rev. Stat. 1963, chap. 120, par. 439.2.) The plaintiff reads the statutory statement that " 'Use' shall not mean * * * the physical incorporation of tangible personal property, as an ingredient or constituent, into other tangible personal property" which is resold, to mean that if any portion of a purchased commodity,

however small that portion may be, is intended to and does become a necessary ingredient in a finished product, the entire purchase is excluded from the tax, regardless of the use to which the balance is put. In our opinion, such a reading of the statute is unwarranted. The text of the statute does not support the anomalous result for which the plaintiff contends, and such a result would mean that one who made out of state purchases would be accorded more favorable tax treatment than one who purchased the same commodity in Illinois, and used it in exactly the same way.

The use tax was adopted to supplement the retailers' occupation tax. (*Turner* v. *Wright,* 11 Ill.2d 161.) As the plaintiff suggests, the provisions of the Retailers Occupation Tax Act are therefore relevant in construing complementary sections of the Use Tax Act. The pertinent provision of the Retailers' Occupation Tax Act reads: "Sales of tangible personal property, which property as an ingredient or constituent goes into and forms a part of tangible personal property subsequently the subject of a 'sale at retail,' are not sales at retail as defined in this Act." (Ill. Rev. Stat. 1961, chap. 120, par. 440.) It seems clear that the retailers' occupation tax thus excludes only that portion of any sale which is actually resold, while leaving taxable that portion which is devoted to a different use. This is the interpretation adopted by the Department in its rules and regulations:

"Art. 2. Sales of property to manufacturers or other producers, who sell such property or any of its reduced component parts or who physically incorporate such property, as an ingredient or constituent, into other tangible personal property which they manufacture or otherwise produce and sell, are not considered to be sales at retail, but are considered to be sales for resale to the extent that such property or its reduced component parts are resold or physically incorporated into tangible personal property which is sold.

"Tangible personal property, even though it is essential to the process of manufacturing or otherwise producing other tangible personal property is, nevertheless, sold at retail (and not for resale within the meaning of this Act) if it is sold to a manfucaturer or other producer who uses or consumes such property in the manufacturing or other production process, but does not physically incorporate such property into the tangible personal property which he manufactures or otherwise produces or sells."

The interpretation expressed in the Department's regulations conforms to the decisions of this court under the retailers' occupation tax which have not regarded a single sale as an indivisible unit, but instead have held that taxability turned upon the uses to which the property was put. For example, in *Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55, it was held that the taxability of milk sold to a State institution depended upon the use that was made of the milk by the purchaser. That portion of the milk that was distributed without charge to wards of the State was held to measure a tax because it was used or consumed by the purchaser, while the dairy was not taxable with respect to that portion of the milk that was resold to employees. Similarly, in *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202, where the question concerned the taxability of pharmaceutical companies and other supply houses that sold medical supplies to hospitals and doctors, this court affirmed orders of the circuit court which held the suppliers liable for the tax with respect to supplies that were transferred without charge to charity patients, but held them not liable for the tax with respect to products that were resold by the hospitals and doctors to paying patients.

We see nothing in the language of the Use Tax Act which suggests that a different construction should prevail when part of a commodity that is purchased out of State is resold, and part is used or consumed. One important and indispensable function performed by the coke, whether

purchased by the plaintiff or converted from coal which the plaintiff purchased, was to supply the heat necessary in the production of pig iron. It is our opinion that all of the coke so utilized, which did not become an ingredient of the finished pig iron, was used within the meaning of the statute. (See *Farrand Coal Co. v. Halpin,* 10 Ill.2d 507; *Franklin County Coal Co. v. Ames,* 359 Ill. 178.) We conclude therefore that the Department properly excluded from its assessment only that coke which became an ingredient of the finished pig iron which was subsequently sold.

The Department correctly measured the amount of metalurgical coal to be excluded from the tax by determining the percentage of plaintiff's purchases which was actually sold either as volatile matter, coke or carbon in pig iron. However, it appears that the Department's assessment on plaintiff's purchases of coke was in error. The tax was figured on the total purchase price less 4 per cent (the amount of carbon by weight in pig iron) whereas the tax should have been based on the total purchase price less the percentage of plaintiff's purchases of coke which was sold as carbon in finished pig iron.

The judgment of the circuit court of Madison County is reversed and remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*