(No. 40823.-

COLUMBIA QUARRY COMPANY, Appellant, *vs.* THE DEPARTMENT OF REVENUE *et al.,* Appellees.

*Opinion filed May 29, 1968.*

WALTER ROOS and WILLIAM BASCOM, both of St. Louis, Missouri, and RANDALL ROBERTSON, of Granite City, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD E. FRIEDMAN, First Assistant Attorney General, and JOHN J. O'TOOLE, Assistant Attorney General, of counsel,) for appellees.

PER CURIAM: This administrative review action comes before us a second time to determine, *inter alia,* the consequences of the Retailers' Occupation Tax Act upon the sale of limestone to a steel company. The cause previously came before this court on direct appeal from an order of the circuit court of Sangamon County affirming the determination by the Department of Revenue that the plaintiff, Columbia Quarry Company, was liable for a tax measured by the full sale price of the limestone. The central issue then, as now, was whether the sale was one "for use or consumption and not for resale" so that it qualified as a "sale at retail" under the Act. (Ill. Rev. Stat. 1961, chap. 120, par. 440.) Being unable to resolve this issue on the facts of record, we vacated the judgment of the circuit court and directed that the cause be remanded to the Department "to conduct a hearing on the disposition of the limestone after its purchase by the steel company." (*Columbia Quarry Co.*

v. *Department of Revenue,* 34 Ill.2d 46, 48.) Following such hearing the Department reaffirmed its original assessments which in turn were affirmed by the circuit court. It is from this latter judgment that the present appeal is taken directly to this court, State revenue being involved.

Briefly, the relevant factual evidence now before us is that Columbia Quarry Company sells limestone ($CaCO_3$) to the Granite City Steel Company at $1.85 per ton which the latter uses in both the blast furnace from which it obtains pig iron and in the open hearth furnaces from which it obtains steel. The limestone in both instances is utilized as a fluxing agent to remove impurities from the molten metal while it is in the molten stage. These processes, where the limestone is placed in a furnace with scrap steel or iron ore, separate it into two component parts, carbon dioxide ($CO_2$), 43.7%, and lime ($CaO$), 56.3%. The carbon dioxide rises up a chimney and dissipates into the atmosphere while the lime emerges from the furnace as a component of slag constituting 40% to 45% of the total makeup thereof. Slag is then sold by the steel company at a price ranging between seven and thirteen cents per ton, for further processing and ultimate use as road ballast and for railroad application.

J. Russell Britt, Director of Research and Product Development at Granite City Steel, testified regarding his company's contemplated use of the limestone when purchased. He stated that the primary purpose of the limestone was for use as a fluxing agent, to the extent that even if it were not recoverable in the form of slag and resaleable it would still be purchased. He further stated, however, that the limestone's use in the formation of slag was foreseen and intended by his company as part of its continual effort to develop saleable by-products, which he considered slag to be, to defray manufacturing costs.

Although the validity of tax assessments other than the retailer's occupation tax due on the foregoing transactions

were litigated before the hearing officer, the principal dispute on appeal is, once again, the amount of this tax owed on these transactions. The Department contends that Columbia is liable for a tax measured by the entire sale price of the limestone for the periods designated, $1,429,028.40, making a tax due of $39,866.48. On the other hand, Columbia contends that its sales of limestone are divisible and that it should not be assessed a retailers' occupation tax on that portion of the limestone (CaO) which becomes a component of slag and is resold by Granite City. An unrelated issue is also raised concerning the propriety of a tax penalty in the amount of $1,526.32 for deficiency in payment of the use tax assessed against certain other sales.

The pertinent provisions of the Retailers' Occupation Tax Act read as follows: " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to a purchaser, for use or consumption and not for resale in any form as tangible personal property, * * *. Sales of tangible personal property, which property as an ingredient or constituent goes into and forms a part of tangible personal property subsequently the subject of a 'sale at retail', are not sales at retail as defined in this Act." Ill. Rev. Stat. 1961, chap. 120, par. 440.

It is thus evident that that portion of tangible personalty which is actually resold is excluded from taxation under the Act while that portion which is consumed by the purchaser is left taxable. Such is the interpretation adopted by the Department of Revenue in Article 2 of its rules and regulations: "Sales of property to manufacturers or other producers, who sell such property or any of its reduced component parts or who physically incorporate such property, as an ingredient or constituent, into other tangible personal property which they manufacture or otherwise produce and sell, are not considered to be sales at retail, but are considered to be sales for resale to the extent that such property or its reduced component parts are resold or physically

incorporated into tangible personal property which is sold."

As we previously pointed out in *Granite City Steel Co.* v. *Department of Revenue,* 30 Ill.2d 552, 559, "The interpretation expressed in the Department's regulations conforms to the decisions of this court under the retailers' occupation tax which have not regarded a single sale as an indivisible unit, but instead have held that taxability turned upon the uses to which the property was put." (*Modern Dairy Co.* v. *Department of Revenue,* 413 Ill. 55; *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202.) In *Granite City* the disputed issue involved the use tax owed on certain purchases of metallurgical coal and coke from out-of-state sellers. The coke was used by the steel company in the manufacture of pig iron and steel primarily as a heating agent but with some of the carbon from the coke being infused into the finished pig iron. The coal was burned to produce coke and this process yielded a number of volatile by-products, such as benzol gas and naphthalene. Following its regulations, the Department conceded that the amount of coal and coke that was actually resold in some form, whether as volatile by-products, as coke, or as carbon in the finished pig iron, was not subject to the use tax.

In the instant case, the limestone is used by the same steel company in the same manufacturing process to "flux off" impurities. In the process, part of the limestone is completely consumed while part becomes a constituent of slag which is resold. In our judgment, the reasoning set forth in *Granite City* is controlling here, making that portion of the limestone (56.3%) incorporated into the slag exempt from retailers' occupation tax.

It should be noted that we reach this decision despite the Department's urging that certain principles announced in *Smith Oil and Refining Co.* v. *Department of Finance,* 371 Ill. 405, 408, dictate an opposite result; specifically, its statement that "Before a commodity can be said to have been resold as an ingredient of the finished product, it must

be shown to have been used with the intention that it should become a part of it, and not solely for some other and distinct purpose." That court also found that the tangible personal property in question which became incorporated in a resaleable end product was so insignificant it could be regarded as *de minimis*. While the production of slag is the natural consequence of the previously described pig iron and steel manufacturing processes, it is clear from the record here that its resale is contemplated by the steel company as a means of defraying manufacturing costs. Moreover, as we noted in *Granite City*, in the *Smith* case no attempt was made to determine taxability on the basis of the particular uses to which the purchased property was put. Furthermore, the large proportion of limestone which goes into the slag, and the total sales of slag for the approximate period in question, $129,450.59, render the doctrine of *de minimis* inapplicable.

Accordingly, since Columbia Quarry Co. has already paid under protest a tax measured by the full sale price of the limestone, it is entitled to a tax credit for 56.3% of that sales price, representing the percentage of the limestone incorporated in the slag. See *Granite City* v. *Department of Revenue*, 30 Ill.2d 552, 560.

In support of its contention that a 10% penalty imposed for deficiency in payment of use tax assessed on certain other sales was improper, plaintiff argues that the Use Tax Act (Ill. Rev. Stat. 1961, chap. 120, pars. 439.1 *et seq.*) does not authorize such penalty where, as it alleges here, a taxpayer files a return honestly believing that it is correct and the Department does not allege fraud. Sections 4 and 5 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1961, chap. 120, pars. 443, 444), which are equally applicable to the Use Tax Act (*Turner* v. *Wright*, 11 Ill.2d 161), empower the Department of Revenue to levy penalties in certain described instances, including the filing of a deficient return. Furthermore, a taxpayer's asserted belief that it was

not liable to pay certain taxes is not sufficient to justify its failure to pay or resist the imposition of a penalty for non-payment. (*Miller Brewing Co.* v. *Korshak,* 35 Ill.2d 86.) No reason having been shown why the penalty should be set aside, it must be affirmed.

> *Reversed in part and*
> *affirmed in part.*