THE AMERICAN DISTILLING COMPANY, Plaintiff-Appellant, *v.*
THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (4th Division)   No. 76-1282

Opinion filed September 15, 1977.

Richard J. Short, of Chicago (Hofheimer, Gartlir, Gottlieb & Gross, of New York, of counsel), for appellant.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County. This action was originally brought under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), to review two final assessments of the Illinois Department of Revenue which assessed the plaintiff a total of $376,435.66 under the Illinois Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.2), in connection with the plaintiff's purchases of new barrels employed in the production and aging of bourbon whiskey.

The issues presented for review are: (1) whether the new, charred, white oak barrels are outside the scope of the Use Tax statute; (2) whether the Use Tax statute is inapplicable to these barrels where the "ingredient cost" is the incorporation of the extract into the whiskey, and the balance is an intentionally produced by-product; and (3) whether or not the assessment of the Department of Revenue and the decision of the court below are contrary to the facts and the law and against the manifest weight of the evidence.

The facts of the case are, the plaintiff, American Distilling Company, is in the business of producing a variety of distilled, alcoholic, beverages. One of the products the plaintiff produces is bourbon whiskey. The

production of bourbon whiskey is regulated by the United States Department of the Treasury. In order for the distiller to obtain a Certificate of Authority from the Treasury Department certifying the product as bourbon whiskey it is necessary for the Bureau of Alcohol, Tobacco and Firearms to inspect the product and to see it has been manufactured in accordance with the applicable Treasury Department regulation. The regulation requires the bourbon be "distilled in the United States at not exceeding 160° proof (80° Gay-Lussac) from a fermented mash of grain of which not less than 51% was corn grain (maize) and aged for not less than two years in charred new oak containers." It was the uncontroverted testimony, at a hearing held by the Department of Revenue, that bourbon whiskey cannot be made without the aging process in these new, charred, white oak containers. These containers can be used only once in the production of bourbon whiskey and then are useless. The function of these barrels is to provide flavor bodies and extracts from the wood which are ingredients of the final product, bourbon whiskey.

The process of making bourbon is a complex one. The first step in the process is the purchase of corn, rye and barley grains in a 70%-20%-10% ratio. The corn and rye grains are cleaned, ground, and cooked at high temperature. They are then mixed with water where they gelatinize and produce what is known as "slurry." The barley is then mixed in and produces enzymes which react with the other two grains and convert them into sugars. This results in what is known as "mash." Yeast is added to this mixture, fermented for approximately three days, with the resulting conversion of the mash to alcohol. The fermented slurry is then separated from the alcohol by distillation. Then there is a second distillation process which produces the raw material of bourbon. The liquid is at this point a harsh, unpalatable, clear liquid which is offensive both in odor and taste. If this liquid were to be stored in an inert container, it would remain in this objectionable state forever. In order to change this liquid to bourbon, it is put into new, charred, white oak barrels. The function of the barrels is to impart the tannins and other wood extractives to the raw alcohol which cause the bourbon to take on its distinctive color, bouquet, and taste. Without the use of these barrels, there could be no bourbon whiskey for it was the uncontroverted evidence below there is no known scientific means for man to artifically create bourbon whiskey. It is clear the barrels' function is vital to the production of bourbon whiskey.

The Illinois Use Tax Act (Ill. Rev. Stat. 1975, ch. 120, par. 439.2), provides:

> " 'Use' does not mean the interim use of tangible personal property by a retailer before he sells such tangible personal property and

does not mean the physical incorporation of tangible personal property, to the extent not first subjected to a use for which it was purchased, as an ingredient or constituent, into other tangible personal property (a) which is sold in the regular course of business or (b) which the person incorporating such ingredient or constituent therein has undertaken at the time of such purchase to cause to be transported in interstate commerce to destinations outside the State of Illinois: Provided that the property purchased is deemed to be purchased for the purpose of resale, despite first being used, to the extent to which it is resold as an ingredient of an intentionally produced product or by-product of manu-facturing."

■■ In the instant case the purchase of the new, white oak barrels is made with the express intention of using them to manufacture bourbon whiskey. The tannins and other wood extracts are intended to be ingredients of bourbon whiskey. As we discussed above, without these extracts there would be no bourbon whiskey. The plaintiff certainly intends for the extracts to be incorporated as one of the ingredients of the product for resale.

■■ The State argues the barrels are primarily for the purpose of storage and they are not ingredients of an intentionally produced product. While it is true the barrels are for the purpose of storing the raw alcohol, the storage is in and of itself a part of the manufacturing process. Without the storage in the barrel you would never be able to produce bourbon whiskey.

■■ The State would also urge this court to say the barrels are not by-products of manufacturing. They also urge the fact the amendments by the legislature in 1969 overrule the decisions of the Illinois Supreme Court in the case of *Columbia Quarry Co. v. Department of Revenue* (1966), 34 Ill. 2d 46; (1968), 40 Ill. 2d 47. We find these arguments unpersuasive. It would be an exercise in illogic for us to say the barrels are not by-products of the manufacturing process. A by-product is defined as "A secondary or additional product; something produced, as in the course of a manufacture, in addition to the principal product." (Webster's New International Dictionary (2d ed. 1941).) Here the barrels are a required part of the process of making bourbon when they are first used, and then by law, they are so changed it is illegal to attempt to use them again to make bourbon. It is obvious the barrels are so changed by the manufacturing process, they are a secondary or additional by-product and are not taxable. The barrels are not useless, but can be and are resold for other uses.

■■■ The State's argument the intent of the legislature was to include commodities such as these barrels when they amended the Use Tax Act

after the supreme court's decisions in the *Columbia Quarry Co.* case is incorrect. In the State's brief on page 13 the State points out the fact that one of the changes the legislature made in the Act was the addition to the Act of an exemption for the by-products of manufacturing. It is true, as the State argues in its brief on page 12, "In construing the amended act, it must be presumed the legislature knew of the interpretation placed on its language in the prior Act by the court in *Columbia Quarry* (see *Mier v. Staley*, 28 Ill. App. 3d 373, 329 N.E.2d 1, 10 (1975)), and the amendment was intended to effect some purpose. *Continental Ill. N.B. & T. Co. v. Illinois St. T. Hy. Com'n*, 42 Ill. 2d 385, 251 N.E.2d 253, 258 (1969)." However, this court feels the correct interpretation of the legislative amendments was to clarify the language of the Act and bring it into conformance with the opinion of the supreme court in the *Columbia Quarry Co.* case. As the supreme court said in the *Columbia Quarry Co.* case: "As we previously pointed out in *Granite City Steel Co. v. Department of Revenue*, 30 Ill.2d 552, 559, '[t]he interpretation expressed in the Department's regulations conforms to the decisions of this court under the retailers' occupation tax which have not regarded a single sale as an indivisible unit, but instead have held that taxability turned upon the uses to which the property was put.' (*Modern Dairy Co. v. Department of Revenue*, 413 Ill. 55; *Burrows Co. v. Hollingsworth*, 415 Ill. 202.) In *Granite City* the disputed issue involved the use tax owed on certain purchases of metallurgical coal and coke from out-of-state sellers. The coke was used by the steel company in the manufacture of pig iron and steel primarily as a heating agent but with some of the carbon from the coke being infused into the finished pig iron. The coal was burned to produce coke and this process yielded a number of volatile by-products, such as benzol gas and naphthalene. Following its regulations, the Department conceded that the amount of coal and coke that was actually resold in some form, whether as volatile by-products, as coke, or as carbon in the finished pig iron, was not subject to the use tax." (40 Ill. 2d 47, 51.) Therefore, where the bourbon barrels are resold after being put to their intended use, the Department cannot collect a tax. It was not the intent of the legislature to overrule the supreme court, but an attempt by the legislature to eliminate the long and expensive litigation necessitated by the unamended Use Tax Act.

■■ It is well settled in Illinois the revenue laws are not to be extended beyond the clear import of the language used and when there is any doubt they are to be construed strictly against the government and in favor of the taxpayer. (*Paris v. Lyons* (1956), 8 Ill. 2d 590, 598.) In the instant case we feel the language and the intent of the legislature is clear and these barrels are outside the Illinois Use Tax Act. The judgment of

the trial court and the findings of the hearing officer are clearly against the manifest weight of the evidence and contrary to law.

Accordingly, for the reasons contained herein, the judgment of the circuit court of Cook County is reversed.

Reversed.

JOHNSON and ROMITI, JJ., concur.