ARMOUR PHARMACEUTICAL COMPANY, Plaintiff-Appellee and Cross-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants and Cross-Appellees.

First District (6th Division)   No. 1—99—0889

Opinion filed April 13, 2001.

---

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Darryl B. Simko, Assistant Attorney General, of counsel), for appellants.

Horwood Marcus & Berk, Chtrd., of Chicago (Fred O. Marcus, Jordan M. Goodman, and Brian L. Browdy, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

The Illinois Department of Revenue (the Department) appeals an order of the circuit court reversing the Department's finding that alcohol used by Armour Pharmaceutical Company (Armour) in making certain pharmaceutical products is subject to a use tax. Armour

cross-appeals the portion of the order of the circuit court affirming the Department's finding that Armour utilized an unauthorized method of computing and reporting its use tax liability.

On appeal, the Department argues that the circuit court erred in determining that the alcohol at issue was a "by-product of manufacturing" excepted from taxation under section 2 of the Use Tax Act (35 ILCS 105/2 (West 1998)). On cross-appeal, Armour argues that the Department and the circuit court erred in rejecting Armour's methodology for recovering overpayments of its use tax. We affirm on the appeal and on the cross-appeal.

Armour manufactured pharmaceutical products derived from human plasma. As part of its manufacturing process, Armour employed alcohol to separate human plasma into various "fractions." During the fractionation process, the alcohol became contaminated with human proteins.

During the last stage of the process, Armour recycled the alcohol by removing it from the plasma products and sending it to an "alcohol recovery system" where Armour removed all remaining human proteins. Armour sold the recycled alcohol to unrelated manufacturers.

■ Through a series of accounting procedures, Armour effectively paid no use tax on the recycled alcohol. The Use Tax Act (35 ILCS 105/3 (West 1998)) imposes a tax upon the privilege of using tangible personal property purchased at retail from a retailer. In order to avoid multiple taxation of the same personal property as it moves through the chain of production, only those transactions involving a consumer of the personal property are subject to taxation. *Container Corp. of America v. Wagner*, 293 Ill. App. 3d 1089, 1093 (1997). Thus, the Use Tax Act makes a statutory exception for property that is resold or incorporated into the other property for resale. *Container Corp.*, 293 Ill. App. 3d at 1093. Specifically, section 2 of the Use Tax Act excludes from taxation any personal property "resold as an ingredient of an intentionally produced product or *by-product of manufacturing*." (Emphasis added.) 35 ILCS 105/2 (West 1998).

Armour determined that the recycled alcohol was a "by-product of manufacturing," which is excluded from taxation under section 2 of the Use Tax Act. See 35 ILCS 105/2 (West 1998). The Department disagreed and issued a notice of tax liability. Armour filed a timely protest to the Department's notice.

An administrative hearing was held. The Department's administrative law judge (ALJ) found that the recycled alcohol was subject to use taxation and that Armour's method of use tax accounting and reporting was not authorized by law. The ALJ recommended that the notice

of tax liability be upheld in its entirety. The Department accepted the ALJ's recommendation.

Armour filed a complaint for administrative review. The circuit court reversed the Department's finding that the recycled alcohol was subject to use taxation and affirmed the Department's finding that Armour had used an unauthorized method of computing and reporting its use tax liability. The Department appeals the portion of the circuit court's order reversing its finding that the recycled alcohol is subject to use taxation. Armour cross-appeals the portion of the circuit court's order affirming the Department's finding that Armour used an unauthorized method to compute and report its use tax liability.

■ First, we address the Department's appeal. In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)), we review the agency's decision and not the circuit court's determination. *XL Disposal Corp. v. Zehnder*, 304 Ill. App. 3d 202, 207 (1999). The agency's decisions on questions of fact are entitled to deference and are reversed only if they are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Where the agency decides a mixed question of fact and law, the decision is reversed only if it is clearly erroneous. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998). Where there is no question of fact and the issue is one of law only, the agency's decision is reviewed *de novo. Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214 (1994).

The Department argues that the clearly erroneous standard of review, as set forth in *City of Belvidere*, applies here. The issue in *City of Belvidere* was whether the city's refusal to engage in collective bargaining with the union over the city's decision to contract out paramedic services to a private ambulance company amounted to an unfair labor practice in violation of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 1994)). *City of Belvidere*, 181 Ill. 2d at 202. In resolving the issue, the court noted that the Illinois State Labor Relations Board ( Board) had made a factual determination that the city's decision affected wages, hours and other conditions of employment pursuant to section 7 of the Act. *City of Belvidere*, 181 Ill. 2d at 201, 205. The court further noted that the Board's finding concerned a question of law because the phrase "wages, hours and other conditions of employment" was a legal term that required interpretation. *City of Belvidere*, 181 Ill. 2d at 205. Therefore, the court held that the Board's determination was a mixed question of fact and law for which the clearly erroneous standard of review was appropriate. *City of Belvidere*, 181 Ill. 2d at 205.

■ By contrast, here we are not asked to review any factual findings made by the Department. Rather, the issue before us only involves a question of law, specifically, whether Armour's recycled alcohol is a "by-product of manufacturing" excepted from use taxation under section 2 of the Use Tax Act. Therefore, our standard of review is *de novo*.

■ Section 2 of the Use Tax Act does not define "by-product of manufacturing." Where a statutory term is undefined, that term must be given its ordinary and properly understood meaning. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 397 (1990). The term "by-product" is ordinarily understood to mean "a secondary or additional product: something produced (as in manufacturing) in addition to the principal product." Webster's Third New International Dictionary 307 (1986).

■ The Department argues that the ordinary dictionary definition of "by-product" contemplates the creation of some new property resulting from the use of other property in manufacturing. The Department contends that the recycled alcohol that came out of Armour's fractionation process was essentially no different from the alcohol that went into the process and, thus, the recycled alcohol was not a new property. Since the recycled alcohol was not a new property, it could not be considered a by-product.

We disagree. The alcohol that went into the process was uncontaminated with human proteins and was suitable for human plasma fractioning. The recycled alcohol that came out of the process had been contaminated by human proteins which, according to federal regulations, rendered the recycled alcohol unsuitable for human plasma fractioning even after the proteins were removed. Thus, the recycled alcohol that came out of the process was different from the alcohol that went into the process because the recycled alcohol could no longer legally be used by Armour in its manufacturing of pharmaceutical products derived from human plasma.

This case is similar to *American Distilling Co. v. Department of Revenue*, 53 Ill. App. 3d 42 (1977). In *American Distilling*, the issue was whether new, charred white oak barrels used in the production and aging of bourbon whiskey were outside the scope of the Use Tax Act. *American Distilling*, 53 Ill. App. 3d at 43. The court noted the uncontroverted testimony that bourbon whiskey cannot be made without the oak barrels, which provide the flavor bodies and extracts from their wood. *American Distilling*, 53 Ill. App. 3d at 44. The barrels can only be used once in the making of bourbon whiskey. *American Distilling*, 53 Ill. App. 3d at 44.

The State argued that the barrels were not by-products of

manufacturing. *American Distilling*, 53 Ill. App. 3d at 45. The court adopted the Webster definition of "by-product": " 'A secondary or additional product; something produced, as in the course of a manufacture, in addition to the principal product.' " *American Distilling*, 53 Ill. App. 3d at 45, quoting Webster's New International Dictionary (2d ed. 1941). The court then stated:

> "Here the barrels are a required part of the process of making bourbon when they are first used, and then *by law*, they are so changed it is illegal to attempt to use them again to make bourbon. It is obvious the barrels are so changed by the manufacturing process, they are a secondary or additional by-product and are not taxable." (Emphasis added.) *American Distilling*, 53 Ill. App. 3d at 45.

Similarly, here, the recycled alcohol is a required part of the fractionation process when it is first used, but it is so changed that, by law, it may not be used again for fractionation of human plasma. Accordingly, the recycled alcohol is so changed by the manufacturing process that it constitutes a secondary or additional by-product and is not taxable.

The Department argues that the "lynchpin" of the court's holding in *American Distilling* was that the manufacturing process there robbed the barrels of the ingredients necessary to make bourbon. The Department argues that, by contrast, Armour's manufacturing process did not similarly rob the recycled alcohol of any essential ingredient or alter the alcohol's chemical composition. Therefore, the Department argues that *American Distilling* is inapposite.

We disagree. The court held in *American Distilling* that the barrels were by-products because they were so changed during the manufacturing process that they could no longer legally be used to make the principal product (bourbon). Similarly, the recycled alcohol here is a by-product because it is so changed during the manufacturing process that it can no longer legally be used to make the principal product (pharmaceutical products derived from human plasma). *American Distilling* is dispositive here.

The Department argues that the court's discussion in *American Distilling* regarding by-products was *dictum*, because the court had already determined earlier in the opinion that the barrels were not subject to use taxation under a different exception in the Use Tax Act. However, even assuming that the court's discussion of by-products was *dictum*, that discussion constituted an expression of opinion on a point argued by counsel and deliberately passed upon by the court. Thus, the court's discussion of by-products constituted judicial *dictum* (as opposed to mere *obiter dictum*) and should be followed unless found to be erroneous. See *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)

(and its discussion of the differences between judicial *dictum* and *obiter dictum*). As discussed, we agree with the court's analysis in *American Distilling* regarding what constitutes a by-product under the Use Tax Act, and we hold that the recycled alcohol here is a by-product excepted from taxation.

■ Next, we address Armour's cross-appeal. Armour contends that the Department erred in rejecting Armour's methodology for recovering the overpayment of its use tax. As succinctly noted by the circuit court, Armour's method was to reduce its use tax basis by the amount of sales tax liability on the sale of the recycled alcohol. The Department argues that Armour's method is not authorized by statute and that Armour instead should have filed a refund claim under section 6 of the Retailers' Occupation Tax Act (35 ILCS 120/6 (West 1998)). Our review is *de novo. Envirite Corp.*, 158 Ill. 2d at 214.

Armour admits that its methodology is not expressly authorized by statute. Instead, Armour relies on private letter rulings from the Department that allegedly support Armour's position. However, private letter rulings have no precedential effect. *Union Electric Co.*, 136 Ill. 2d at 400. Further, the private letter rulings cited by Armour are inapposite as they do not address the exact method used by Armour here to compute its use tax on the recycled alcohol.

Armour also cites two cases, *Clark Oil & Refining Corp. v. Johnson*, 154 Ill. App. 3d 773 (1987), and *Sunnyland Cabinet & Millwork, Inc. v. Department of Revenue*, 52 Ill. App. 3d 25 (1977). *Clark Oil* addressed the Department's use of the "relative volume approach" for computing the proper amount of use tax due on Clark Oil's use of certain oil refinery products. *Sunnyland* addressed whether the Department could collect a retailers' occupation tax on the taxes that plaintiff collected from its customers and remitted to the Department. Neither *Clark Oil* nor *Sunnyland* involved the issue here, *i.e.*, whether Armour used an unauthorized methodology for recovering its use tax on the recycled alcohol.

The Department argues that Armour properly should have filed a claim for a refund of the use tax on the recycled alcohol. Section 19 of the Use Tax Act (35 ILCS 105/19 (West 1998)) provides that when a taxpayer pays an erroneous amount of use tax, "whether such amount be paid through a mistake of fact *or an error of law*, such [taxpayer] may file a claim for credit or refund with the Department in accordance with Section[ ] 6 *** of the Retailers' Occupation Tax Act." (Emphasis added.)

As discussed, Armour paid use tax on an alcohol by-product that is exempt from taxation under the Use Tax Act. The payment of the tax was an error of law to which section 6 of the Retailers' Occupation

Tax Act applies. Accordingly, we affirm the Department's finding that Armour's proper remedy is to file a refund claim in accordance with section 6 of the Retailers' Occupation Tax Act.

This case is being considered a second time. On August 18, 2000, an opinion issued with these same words, *verbatim*. On February 23, 2001, our supreme court vacated that opinion and ordered reconsideration in light of *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998). *City of Belvidere* was considered and analyzed in the first opinion and is considered and analyzed here.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

CAMPBELL, P.J., and REID, J., concur.[1]

---

[1]Justice Morton Zwick previously sat on this panel. Justice Zwick is no longer with the appellate court. Justice Ellis Reid is replacing Justice Zwick on the panel. He has reviewed the audio cassette of oral arguments and the briefs in this case.