No. 3-01-0860

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

CENTRAL ILLINOIS LIGHT CO., 

FREEMAN UNITED COAL MINING CO.,

Plaintiffs-Appellees,

v.

THE DEPARTMENT OF REVENUE OF THE STATE OF ILLINOIS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of the 10th Judicial Circuit Peoria County, Illinois

No. 00-MR-419

Honorable

Donald C. Courson

Judge, Presiding

JUSTICE LYTTON delivered the opinion of the court:

Plaintiffs, Central Illinois Light Company and Freeman United Coal Mining Co. (together, CILCO), applied to the defendant, Illinois Department of Revenue, for a pollution control facility exemption for their purchases of coal.  CILCO claimed that because its coal produced electricity that powered a pollution control system, the coal should be exempt from the Illinois Use Tax Act (Act).  The Department denied the exemption, finding that the primary purpose of the coal was not pollution control. CILCO appealed the decision to the circuit court.  The circuit court reversed the administrative decision.  We reverse the judgment of the circuit court and confirm the ruling of the Department.

At the administrative proceeding, the parties waived an evidentiary hearing, and, instead, stipulated to certain relevant facts.  The parties agreed that CILCO, a utility company, operates two coal-fired power plants in Illinois known as the E.D. Edwards and Duck Creek plants.  When the coal at these plants is burned, it produces emissions known as "flue gas," a discharge that has been classified as a pollutant by both the Illinois and federal Environmental Protection Agencies.  CILCO employs two types of pollution control devices at these plants: an electrostatic precipitator at the Edwards facility and a precipitator in conjunction with a sulfur dioxide scrubber at the Duck Creek plant. Both devices constitute "pollution control facilities" as defined by the Act.  35 ILCS 105/2a (West 2000). The pollution control facilities operate continuously through electricity provided by CILCO.  CILCO can compute how much additional electricity it must produce to power the devices.  

Based on these stipulated facts, CILCO claimed an exemption from the Illinois use tax only on the coal needed to produce electricity to power the pollution control devices.  CILCO asserted that the coal qualified as part of a pollution control facility, which is specifically exempted under the Act.  The Department cited the "primary purpose" test from the Act and argued that for the coal to be exempt from use tax, its primary purpose must be pollution control. The matter was argued before an administrative law judge.

 The administrative law judge agreed with the Department and determined that CILCO failed to establish that the coal had as its "'primary purpose' the abatement of pollution" and recommended that the exemption be denied.  The Department accepted the ALJ's findings of fact and application of the law and denied the exemption.  CILCO sought review in the circuit court. The circuit court determined that the Department's decision to deny the exemption was clearly erroneous and entered judgment in favor of CILCO and against the Department of Revenue. 

STANDARD OF REVIEW

In reviewing a final decision under administrative review law, we review the agency's finding, not the circuit court's determination.  
Metropolitan Airport Auth. v. Prop. Tax Appeal Bd.
, 307 Ill. App. 3d 52, 55 (1999).  An agency's determination of fact will be disturbed only if it is against the manifest weight of the evidence.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88 (1992).  Questions of law, however, are not entitled to deference and are reviewed 
de novo
.  
Envirite Corp. v. Illinois Environmental Protection Agency
, 158 Ill. 2d 210, 214 (1994).   
Our supreme court held that a case that involves the examination of the legal effect of a set of given facts is a question of mixed law and fact, and therefore should not be overturned unless clearly erroneous.  
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  

The Department argues that we must review this case under a clearly erroneous standard, since a question of mixed law and fact exists. To decide this case, we must only determine whether the Act exempts coal burned to power pollution control facilities.  Since the issue is one of statutory interpretation, it must be reviewed under a 
de novo
 standard.  See 
City of Belvidere
, 181 Ill. 2d at 205.  However, in arriving at our determination in this case, the agency's determination will remain "relevant" to our analysis. See 
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254 (1995).

ANALYSIS

I.

The Department argues that the primary purpose of the coal is to produce energy, not control pollution.  Statutes imposing tax liability are generally construed against the state and in favor of the 
taxpayer (
People Who Care v. Tax Objectors,
 193 Ill. 2d 490, 496 (2000)).  However, statutory exemptions to taxation are strictly construed in favor of taxation. 
Chicago Bar Ass'n v. Department of Revenue
, 163 Ill. 2d 290, 301 (1994).  The party seeking the exemption bears the burden of clearly and conclusively proving it is entitled to the exemption.  
Chicago Bar Ass'n
, 163 Ill. 2d at 300.  All debatable questions must be analyzed in favor of taxation.  
Wyndemere Retirement Community v. Department of Revenue
, 274 Ill. App. 3d 455, 459 (1995). 

A tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail from a retailer."  35 ILCS 105/3 (West 2000).  However, section 2a of the Act exempts pollution control facilities by removing those facilities from the definition of tangible personal property under the statute.  35 ILCS 105/2a (West 2000). "Pollution control facilities" are defined as "any system, method, construction, device or appliance appurtenant thereto sold or used or intended for the primary purpose of eliminating, preventing, or reducing air and water pollution ... or for the primary purpose of treating, pretreating, modifying or disposing of any potential solid, liquid or gaseous pollutant..." 35 ILCS 105/2a (West 2000). 

The pollution control facility tax exemption is governed by the "primary purpose" test.   
Du-Mont Ventilating Co. v. Department of Revenue
, 73 Ill. 2d 243, 248 (1978). The primary purpose of the property for which the exemption is sought must be pollution control or abatement.  
Central Illinois Public Service Co. v. Department of Revenue
, 158 Ill. App. 3d 763, 768 (1987).  The test is not satisfied merely upon proof that the use of certain tangible personal property results in pollution control.  
Shell Oil Co. v. Department of Revenue
, 117 Ill. App. 3d 1049, 1053 (1983). Only property directly involved in pollution abatement qualifies for the exemption.  
Central Illinois Public Service Co.
, 158 Ill. App. 3d at 768.

Primary is defined as "original,""fundamental," and "basic." Webster's Third New International Dictionary 1800 (1986). Under this definition, the primary purpose of the coal burned by CILCO is not the abatement or control of pollution.  The primary purpose of the coal is to produce electricity.  The electricity powers the pollution control system, which results in a decreased output of flue gas.  CILCO claims that because burning the coal eventually results in pollution control, the end result is sufficient to qualify the coal for the exemption.  However, if the primary purpose of the coal is not pollution control, any resulting benefits are only adventitious, and the coal is not exempt from the tax.  Any other outcome is contrary to the general rule that tax exemptions are construed against the taxpayer and in favor of taxation. See 
Chicago Bar Ass'n v. Department of Revenue
, 163 Ill. 2d 290, 301 (1994). 

CILCO cites us to 
Wesko Plating, Inc. v. Department of Revenue
, 222 Ill. App. 3d 422 (1991), where the Department had promulgated a regulation which specifically excluded chemicals used in pollution control equipment from the exemption.  On appeal, the court held that the regulation exceeded the Department's administrative authority and improperly circumscribed the statutory exemption.  
Wesko
, 222 Ill. App. 3d at 426. In its analysis of the statute, the court found that because the chemicals introduced into holding tanks eliminated pollutants through chemical reactions, they were integral to the pollution control system. 
 The court affirmed the circuit court's decision to grant the exemption.  
Wesko
, 222 Ill. App. 3d at 426-27.

There are two important distinctions between this case and 
Wesko
.  In 
Wesko
, the primary, if not sole purpose of the chemicals in the system was to reduce pollution.  In this case, the coal does nothing to directly reduce pollution.  Furthermore, 
Wesko
 struck down a regulation imposing a blanket prohibition against the exemption of chemicals from the use tax.  The issue before us, on the other hand, is statutory, i.e., whether pollution control is the primary purpose of the coal under section 2A of the Act.    

CILCO also relies on 
Beelman Truck Co. v. Cosentino,
 253 Ill. App. 3d 420 (1993).  There, the court 
granted an exemption to pickup trucks used by the transporter of hazardous waste to escort dump trucks carrying such waste, and also to carry any equipment that could be used to clean or contain any waste spill.  
Beelman
, 253 Ill. App. 3d at 421. The court found that the trucks constituted a system or method of eliminating, preventing or reducing pollution, and thus were components of the overall pollution control system. 
Beelman
, 253 Ill. App. 3d at 426. 

Beelman
 is also distinguishable.  The primary purpose of the trucks was to reduce, control and prevent pollution by actually removing pollutants.  Here, the primary purpose of the coal was to produce electricity.  Furthermore, the trucks were not granted the exemption merely because they were components of a system, but because their purpose was integral to the disposal of pollutants. 

Here, the coal is not a constituent part of CILCO's pollution control system.  Thus, we agree with the Department's finding that the primary purpose of the coal is not pollution control. 

II.

CILCO also argues that the primary purpose test is not applicable to this case.  CILCO reasons that but for the production of energy from the burning of coal, the pollution control devices would not operate; therefore the coal is an integral part of the pollution control system.  This "but for" test has been rejected by our own supreme court.  
Du-Mont Ventilating Company v. Department of Revenue
, 73 Ill. 2d 243, 248 (1978); 
Beelman Truck Co. v. Cosentino,
 253 Ill. App. 3d 420 (1993).  In 
Du-Mont
, the supreme court mandated "primary purpose" as the appropriate test to determine which property is exempt from the use tax.  73 Ill. 2d at 248 (1978).  Our court is bound to follow the rulings of the Illinois Supreme Court.  
People v. Wilson
, 331 Ill. App. 3d 434, 441 (2002).  Because we have already determined that the primary purpose of the coal is to produce heat, not to control pollution, the coal cannot be exempted from the tax.  

III.

Next, CILCO complains that the Department promulgated a regulation that impermissibly limited the Act by excluding the fuel necessary for operating pollution control facilities from the statutory definition. See 86 Ill. Admin. Code 130.335 (2000).   However, the administrative law judge clearly stated that her decision was not based on the regulation.  Because the administrative law judge based her decision solely on the application of the Act to the facts, the regulation is not at issue, and this court will not review its validity. 

IV.

Last, CILCO argues that since its systems have been or will be certified by the Illinois and federal Environmental Protection Agencies as pollution control facilities within the statutory meaning of the Act, such certification is conclusive evidence that the primary purpose of those facilities is pollution control.  The agencies' certification, however, applies to the primary purpose of the pollution control facilities, not the coal burned to produce the electricity that powers them.  The certification is not relevant to the issue in this case.

CONCLUSION

The judgment of the circuit court of Peoria County is reversed and the decision of the Department is confirmed.

Circuit court judgment reversed, Department's decision confirmed.

HOLDRIDGE and SLATER, JJ., concur.