NOTICE

Decision filed 04/12/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0467

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ELECTRIC ENERGY, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Massac County. |
| | ) | |
| v. | ) | No. 03-MR-12 |
| | ) | |
| BRIAN HAMER, Director of Revenue, | ) | |
| and THE DEPARTMENT OF REVENUE, | ) | Honorable |
| | ) | Terry J. Foster, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

Taxpayer, Electric Energy, Inc. (EEI), sought judicial review of an administrative decision from the Illinois Department of Revenue (Department) denying a request for a refund of a portion of the use taxes it paid. The circuit court of Massac County affirmed the Department's decision denying the requested refund. EEI now appeals the circuit court's decision. We affirm.

EEI is a corporation located in Joppa, Illinois, and is engaged primarily in the wholesale production of electricity. Six percent of its after-tax income, however, is also derived from the sale of type C specification fly ash. Fly ash, produced by the burning of coal, is a pozzolan, which, in the presence of water, will combine an activator to produce cementitious material. Fly ash is divided into two classes based upon its chemical composition. Fly ash produced from subbituminous and lignite coals is type C and contains more than 20% lime. Fly ash from bituminous or anthracite coal is type F and generally contains less than 10% lime. Specification grade type C fly ash has several commercial applications for use in construction projects as an addition to or replacement for portland

1

cement. In order to produce marketable type C fly ash that meets the required specifications, EEI must choose the proper type of coal and maintain multiple process control requirements. EEI also had to purchase and install certain equipment, machinery, and other improvements in order to produce, collect, transport, and store marketable type C fly ash. EEI filed amended use tax returns seeking a refund of its self-assessed use taxes for the periods from May 1992 through November 1999. The amended returns sought a refund for taxes paid for the percentage of coal used to produce type C fly ash. The Department denied the refund. The Department concluded that because EEI was not a manufacturer and its business operations did not constitute manufacturing, its consumptive use of coal was taxable. The circuit court agreed after determining that the coal purchased was intentionally burned to produce electricity, not to produce fly ash, and that type C fly ash was not an intentionally produced product or by-product of a manufacturing process. The court concluded that EEI owed use tax on all of the coal burned to produce electricity at its Joppa plant.

We are faced with one dispositive issue in this case: whether the coal purchased and used in the creation of type C fly ash as a part of the process of generating electricity qualifies for an exemption from the use tax imposed by the Use Tax Act (Act) (35 ILCS 105/1 *et seq.* (West 2004)). Given that we are reviewing an administrative decision, the agency's determination of fact will be disturbed only if it is against the manifest weight of the evidence. *Central Illinois Light Co. v. Department of Revenue*, 336 Ill. App. 3d 908, 911, 784 N.E.2d 442, 445 (2003). Questions of law, however, are not entitled to deference and are reviewed *de novo*. *Armour Pharmaceutical Co. v. Department of Revenue*, 321 Ill. App. 3d 662, 665, 748 N.E.2d 265, 268 (2001). The examination of the legal effect of a set of given facts presents a mixed question of fact and law calling for a clearly erroneous standard of review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205, 692 N.E.2d 295, 302 (1998); see also *American Federation of State, County & Municipal*

2

*Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577, 839 N.E.2d 479, 485 (2005). The Department argues here that we must review this case under a clearly erroneous standard because a mixed question of fact and law exists. We agree. As explained in *City of Belvidere*, the agency's finding is, in part, factual because it involves considering whether the facts support a finding that the coal is exempted because it is "resold as an ingredient of an intentionally produced product or by-product of manufacturing." 35 ILCS 105/2 (West 2004). Nevertheless, the agency's finding also concerns a question of law because the above-quoted phrase is a legal phrase that requires interpretation. Consequently, under *City of Belvidere*, because this case involves an examination of the legal effect of a given set of facts, it involves a mixed question of fact and law, and as a result, a clearly erroneous standard of review applies.

In addition, as explained by the Illinois Supreme Court in *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 97-98, 606 N.E.2d 1111, 1121-22 (1992), a reviewing court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute. Such an interpretation expresses an informed source for ascertaining the legislative intent. A significant reason for this deference is that agencies can make informed judgments upon the issues, based on their experience and expertise. See *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n*, 95 Ill. 2d 142, 152-53, 447 N.E.2d 295, 300 (1983).

Statutes imposing tax liability are generally construed against the state and in favor of the taxpayer. *Central Illinois Light Co.*, 336 Ill. App. 3d at 912, 784 N.E.2d at 445. Statutory exemptions to taxation, however, are strictly construed in favor of taxation. *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1172 (1994). The party seeking the exemption bears the burden of clearly and conclusively

3

proving that it is entitled to the exemption. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 216, 545 N.E.2d 695, 705 (1989).

Section 3 of the Act imposes a tax "upon the privilege of using in this State tangible personal property." 35 ILCS 105/3 (West 2004). In order to avoid multiple taxation of the same property as it moves through the chain of production, only those transactions involving a consumer of the personal property are subject to taxation. *Armour Pharmaceutical Co.*, 321 Ill. App. 3d at 664, 748 N.E.2d at 267. The Act therefore makes a statutory exception for property that is resold or incorporated into other property for resale. *Armour Pharmaceutical Co.*, 321 Ill. App. 3d at 664, 748 N.E.2d at 267. Specifically, section 2 of the Act exempts from taxation any personal property "resold as an ingredient of an intentionally produced product or by-product of manufacturing." 35 ILCS 105/2 (West 2004). EEI determined that the coal specifically purchased to create fly ash was an ingredient of an intentionally produced product and therefore should be excluded from taxation. While the Department disputes whether the fly ash was an intentionally produced product, we need not address the matter. As the Department correctly argues, the determining language is "manufacturing." EEI is not a manufacturer. The production of electricity is considered a service business. See *People ex rel. Mercer v. Wyanet Electric Light Co.*, 306 Ill. 377, 137 N.E. 834 (1922) (an electric light company is not a manufacturing industry within the meaning of the taxing laws); see also *Farrand Coal Co. v. Halpin*, 10 Ill. 2d 507, 140 N.E.2d 698 (1957) (the sale of electricity is the sale of a service). Because producing electricity is not manufacturing, the fly ash cannot be a by-product or an intentionally produced product of manufacturing as the Act requires. *Cf. Columbia Quarry Co. v. Department of Revenue*, 40 Ill. 2d 47, 237 N.E.2d 525 (1968) (in the manufacturing of pig iron, a portion of the limestone became an ingredient of the slag by-product). As recognized in *Farrand Coal Co.*:

4

"The coal is used by the utility to generate electrical energy. Such use is by the burning or combustion of the coal. When burned, the coal is gone except for the ash residue. It is difficult to perceive how there could be a more complete use or consumption of the coal within the meaning of the act." *Farrand Coal Co.*, 10 Ill. 2d at 513, 140 N.E.2d at 701.

Unfortunately for EEI, the use of coal to produce electricity is a fully taxable event, and therefore, the Department properly denied EEI's requested use tax refund.

For the aforementioned reasons, we affirm the judgment of the circuit court of Massac County affirming the Department of Revenue's denial of a use tax refund.

Affirmed.

SPOMER, J., concurs.

JUSTICE WEXSTTEN[1], dissenting:

The Department of Revenue's interpretation of the Act is too restrictive and is contrary to precedent. See *Granite City Steel Co. v. Department of Revenue*, 30 Ill. 2d 552 (1964) (the Department properly excluded from its use tax assessment the amount of coke, converted from coal and used to supply heat necessary to produce pig iron, that became an ingredient of the finished pig iron that was subsequently sold); *Columbia Quarry Co. v. Department of Revenue*, 40 Ill. 2d 47 (1968) (the portion of limestone, used by the steel company to "flux off" impurities, that was not completely consumed but became a constituent of slag that was resold was exempt from the retailers' occupation tax). Although the production of electricity

---

[1]Justice Hopkins participated in oral argument. Justice Wexstten was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

does not constitute manufacturing (*Farrand Coal Co. v. Halpin*, 10 Ill. 2d 507, 513 (1957)), no precedent precludes EEI from acting as an electric company and a manufacturer for purposes of the Act. There is a process occurring while the coal is burned for electricity, a manufacturing process that results in type C specification fly ash that is subsequently resold. As a result, that portion of coal not completely consumed but which became an ingredient of the type C specification fly ash subsequently resold is exempt from taxation as personal property "resold as an ingredient of an intentionally produced product or by-product of manufacturing." 35 ILCS 105/2 (West 2004); see also *American Distilling Co. v. Department of Revenue*, 53 Ill. App. 3d 42 (1977); *Armour Pharmaceutical Co. v. Department of Revenue*, 321 Ill. App. 3d 662 (2001). For the foregoing reasons, I respectfully dissent.