FOURTH DIVISION

November 28, 2001

No. 1-00-2086

DANIEL McLEAN, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee and ) Cook County.

Cross-Appellant, )

)

v.
 ) 

)

THE DEPARTMENT OF REVENUE, ) Honorable

)
 Alexander P. White,

Defendant-Appellant and )
 Judge Presiding.

Cross-Appellee. )

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Illinois Department of Revenue, issued a notice of penalty tax liability for the period of March 1991 through April 1992, excluding May 1991, against plaintiff, Daniel McLean, the chairman and majority stockholder of Chicago Kitchen Corporation (Corporation), in connection with the Corporation's
 unpaid taxes, penalties and interest under section 13½ of the Retailers' Occupation Tax Act (ROTA) (Ill. Rev. Stat. 1991, ch. 120, par. 452½).  
Plaintiff divided his tax liability period into two periods, the first, covering the period between March 1991 and January 1992, and the second tax period covering February to April 1992.
  Defendant claimed taxes, penalties and interest in the amount of $200,000 for the first period
 and $80,000 for the second
.  
On January 22, 1998, an evidentiary hearing was held before an administrative
 
law
 
judge.  A recommendation for disposition was prepared, which defendant accepted on June 8, 1998, as the final administrative decision.  Defendant issued
 
a final assessment against plaintiff for $256,814.91.  Plaintiff filed a complaint for judicial review of defendant's final assessment with an administrative appeal bond for the full amount of the final assessment.  

The trial court
 
reversed defendant's assessment against plaintiff for the first tax period, holding that plaintiff was not a "responsible person" who had acted "willfully" in failing to pay the Corporation
's taxes.  However, the trial court affirmed defendant's assessment for the second tax period
.  The trial court granted in part and denied in part credits that plaintiff claimed should have been set off against his outstanding tax liability and entered judgment against plaintiff for $70,874.72 representing unpaid taxes, interest and penalties due as of May 1, 2000, for the second tax period, less plaintiff's credits.  On June 1, 2000, the trial court also granted plaintiff's motion to reduce the administrative appeal bond, reducing it to $75,000.  
Defendant and plaintiff filed their notices of appeal and cross-appeal.
  

Plaintiff has invested in numerous businesses varying in industry.  The Corporation is
 one of the businesses in which he invested.  Belmont Racine Building Materials (Belmont), another company which plaintiff invested in, is located next door to the Corporation.  
Plaintiff initially wanted to buy the Belmont building, but the owner would not sell the property unless plaintiff also purchased the business.  Plaintiff bought the business
 only after presenting the opportunity to and hiring Robert Umans, his brother-in-law, to run Belmont.  
The purchase of Belmont occurred a year before the Corporation was incorporated.  

On October 26, 1988, plaintiff owned 650 shares of the Corporation, Umans owned 300 shares,
 and 
David A. Grossberg owned 50 shares.  
Each of the shareholders made small contributions to the Corporation.  Umans also obtained a $50,000 loan
 from Cosmopolitan Bank for operating expenses, which plaintiff co-signed
.  
The Corporation sells kitchens at retail to homebuilders and homeowners.  
Belmont is an allied business.
 
 
A group of investors, including plaintiff and Umans, owned the buildings that housed both the Corporation and Belmont. 
 

P
laintiff was chairman of the board of the Corporation and its sole director; Paul Russo was its president; 
Umans was its vice president and secretary; Marilyn Walsh
 
was its treasurer and controller; and 
Grossberg was its assistant secretary
 as well as the attorney who had incorporated both the Corporation and Belmont.  
Upon its incorporation plaintiff had been the Corporation's president
.  
The Corporation's bookkeeper was Jennifer Teeter. 
 The Corporation held annual meetings which were run by Grossberg.  

Umans hired Russo, who handled the day-to-day operation of the Corporation.  Russo later resigned at Umans' request, and Umans ran the day-to-day operations of the Corporation.  Plaintiff never met Russo and was not consulted regarding his hiring or firing.  
On December 13, 1990, Umans became the president of the Corporation
 and
 joined plaintiff as a director.  
Umans retained his position as secretary, and Gary Holtz replaced Umans as the Corporation's vice president.  Plaintiff remained chairman of the board, and Walsh and Grossberg retained their respective offices.  

Umans and Teeter prepared and signed the 
Corporation's tax forms
 for the period March 1991 through January 1992. 
 Umans and his bookkeeping staff turned in the results of the business to the Corporation's accounting firm, which prepared the income tax returns.  Umans used the same accounting firm that he used for Belmont.  
He was also responsible for
 the Corporation's issuance of purchase orders, payments to the company's creditors, as well as interacting with the customers and suppliers of the company, and all other day-to-day operations.  
 The Corporation's accounting firm also did work for plaintiff's other corporations.  The firm mailed a copy of the Corporation's income tax returns to an accountant who worked for plaintiff.  
Plaintiff saw the prepared income tax returns and the Corporation's year end figures for the years 1989-90
 in which the Corporation's business increased.  Umans informed plaintiff of the increase in business.  During 1989-90, plaintiff personally loaned the Corporation money at Umans' request.  A bank loan was also obtained during this period.  
In late 1990, plaintiff told Umans that he could no longer lend financial assistance to the Corporation and that he could not become involved in the business of the Corporation due to other more involved investments.   
During this time, plaintiff had no day-to-day involvement with the Corporation, and 
at no time did  he sign its tax forms, retailers' occupation tax or otherwise.  A
s a director, plaintiff had a right to  look at the Corporation's financial records but
 never intended to run Belmont or the  Corporation.  
Prior to April 1992, plaintiff had seen neither
 the Corporation's sales tax returns nor the notices of tax deficiency that had been sent to the Corporation.  

After one of plaintiff's other companies, Montana Homes Corporation, had purchased four kitchens from Canac Corporation of Canada (Canac),
 Canac's national sales manager
 
approached
 plaintiff and Umans about using the Corporation as a distributor 
for Canac's kitchen cabinets.  A 
distributorship agreement was signed.  
In February 1992, Canac mailed plaintiff a letter informing him that the Corporation was in default under the distributorship agreement for nonpayment of inventory received.  Plaintiff spoke with Umans, who admitted that the Corporation was behind in paying its sales taxes, federal taxes, Canac, as well as its other suppliers.  A meeting was held between plaintiff, Umans, and representatives of Canac, including its president, Carl Marcus, its vice president of operations, and Jeff Goldman.  The Canac representatives stated that they wanted someone from Canac to operate the Corporation, otherwise they planned to terminate the distributorship agreement.  Plaintiff and Umans agreed to Canac's terms, and Goldman stayed to operate the Corporation.  

Goldman assessed the viability of the business during his time at the Corporation.   He did not have signature authority for the Corporation, so
 
he took all the documents that he wanted executed to Umans, who maintained responsibility for the checks and tax returns.
   Plaintiff would sign checks under Goldman's direction
 when Umans was unavailable, which he did in
 late January 1992 or early February 1992.  
Goldman, Umans and Teeter determined who the checks were written to and the amount.  
During this time, Goldman, Umans, Teeter and Walsh handled the day-to-day business of the Corporation. 
 Umans continued to inform plaintiff of the extent of the Corporation's unpaid bills.  

In April, Canac determined that the Corporation was not a viable business and terminated the distributorship agreement.  Canac was the secured creditor of the Corporation with accounts receivable pledged to it.  Canac took the accounts receivable and the books in exchange for its payables and cancelled the distributorship agreement.  

Defendant raises several issues on appeal: (1) whether its decision that plaintiff failed to present sufficient evidence to rebut the presumption that he was a "responsible person" within the meaning of section 13½ of ROTA throughout both tax periods should be affirmed; (2) whether its decision that plaintiff failed to present sufficient evidence to rebut the presumption that he "willfully" failed to pay the Corporation
's taxes within the meaning of section 13½ of the ROTA throughout both tax periods should be affirmed; and (3) whether the circuit court lacked authority to approve an administrative bond in an amount less than that of the final assessment.  

On his cross-appeal,
 plaintiff raises the following issues: (1) whether defendant's decision and final assessment finding plaintiff to have "willfully" failed to pay taxes in accord with ROTA for the second tax period was clearly erroneous; and (2) whether the trial court erred in denying plaintiff credits toward reducing his alleged tax liability.  

The first issue we consider is whether defendant's decision that plaintiff failed to present sufficient evidence to rebut the presumption that he was a "responsible person" within the meaning of section 13½ of the ROTA throughout both tax periods should be affirmed.  

In reviewing a final decision under the Administrative Review Law (735 ILCS 5/3-101 
et seq.
 (West 1998)), the appellate court reviews the administrative decision rather than the circuit court's determination.  
Armour Pharmaceutical Co. v. Department of Revenue
, 321 Ill. App. 3d 662, 665, 748 N.E.2d 265, 268
 (2001); 
Thigpen v. Retirement Board of Firemen's Annuity & Benefit Fund
, 317 Ill. App. 3d 1010, 1017, 741 N.E.2d 276, 281
 (2000).
  "The Administrative Review Law provides that appellate court review extends to all questions of law and fact presented by the entire record."  
Thigpen
, 317 Ill. App. 3d at 1017,
 741 N.E.2d at 281.  

The administrative agency weighs the evidence, determines the credibility of witnesses and resolves conflicts in testimony.  On administrative review, a circuit court inquires only as to whether the agency's decisions on questions of fact are against the manifest weight of the evidence.  
Thigpen
, 317 Ill. App. 3d at 1017, 741 N.E.2d at 281
; 
Armour Pharmaceutical Co.
, 321 Ill. App. 3d at 665,
 748 N.E.2d at 268.  
" 'An administrative agency's decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.' "  
Thigpen
, 317 Ill. App. 3d at 1017,
 741 N.E.2d at 281, quoting 
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88 (1992). 
 "While an administrative agency's findings of fact are considered 
prima facie
 correct, they must still be based on the evidence, and the agency as fact finder cannot simply disregard the testimony of an unimpeached witness where the testimony is uncontradicted and is not inherently improbable."  
Thigpen
, 317 Ill. App. 3d at 1021
, 741 N.E.2d at 284.  

Where the agency decides a question of law only, the agency's decision is reviewed 
de novo
.
  Where the issue is 
a mixed question of fact and law, its decision is reversed only if it is clearly erroneous.
  
Armour Pharmaceutical Co.
, 321 Ill. App. 3d at 665,
 748 N.E.2d at 268; 
Randolph Street Gallery v. Zehnder
, 315 Ill. App. 3d 1060, 1064, 735 N.E.2d 100, 104
 (2000).   
" 'Clearly erroneous' is said to rest somewhere between the 'manifest weight of the evidence' and '
de novo
,' requiring us to afford some deference to the agency's experience and expertise."  
Randolph Street Gallery
, 315 Ill. App. 3d at 1064, 735 N.E.2d at 104
.  
Under this standard, we must accept the administrative agency's findings unless we are firmly convinced the agency has made a mistake.  
Randolph Street Gallery
, 315 Ill. App. 3d at 1064, 735 N.E.2d at 104
; 
Lutheran Church of The Good Shepherd v. Department of Revenue
, 316 Ill. App. 3d 828, 832, 737 N.E.2d 1075, 1078
 (2000).  

The liability imposed upon an individual defendant, pursuant to section 13½, is derivative in nature.  Only where the corporation has incurred retailers' occupation tax liability and is unable to pay such amounts to the Department of Revenue may personal liability attach to a responsible officer or employee who has "willfully" failed to file retailers' occupation tax returns or pay retailers' occupation taxes.  
Department of Revenue v. Heartland Investments, Inc.
, 106 Ill. 2d 19, 32, 476 N.E.2d 413, 419 (1985).  
Personal liability for a retail corporation's unpaid retailers' occupation taxes, which survives dissolution of the corporation, may be imposed only upon corporate officers or employees who are responsible for the filing of retailers' occupation tax returns and payment of taxes due, and who have "willfully" failed to file such returns or remit such taxes.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 255, 659 N.E.2d 961, 965 (1995).  
Persons who are required to collect, truthfully account for, and pay over any tax are referred to as "responsible persons."  
Aardema v. Fitch
, 291 Ill. App. 3d 917, 920, 684 N.E.2d 884, 887 (1997).  After the 
Department of Revenue presents a 
prima facie
 claim for tax penalty liability for nonpayment of retailers' occupation taxes, the responsible corporate officer or employee has the burden to establish that one or more elements of the penalty are lacking.  
Branson
, 168 Ill. 2d at 261, 659 N.E.2d at 968
.  

We find that the division of the tax period was not only proper, but that the issue has been waived by defendant.  In 
Department of Revenue v. Marion Sopko, Inc.
, 84 Ill. App. 3d 953, 955, 406 N.E.2d 188, 189 (1980), the trial court determined that for the period January 1969 through June 1974, the defendant's
 conduct did not constitute willful failure to pay the retailers' occupation tax, but for the months of January, March, April and June 1976, the defendant did willfully fail to pay the tax.  In 
Branson
, 168 Ill. 2d at 268, 659 N.E.2d at 971, the supreme court affirmed the appellate court ruling that the plaintiff was liable for retailers' occupation taxes
 for the period of November 1, 1986 to January 25, 1987, but not for the period of June 1, 1986 through October 31, 1986.  
Here, defendant failed to raise this issue during the administrative hearings and generally a failure to object at the original proceeding constitutes a waiver of the right to raise the issue for the first time
 on appeal.  
E & E Hauling, Inc. v. Pollution Control Board
, 107 Ill. 2d 33, 38, 481 N.E.2d 664, 666 (1985); 
Freedom Oil Co. v. Pollution Control Board
, 275 Ill. App. 3d 508, 514, 655 N.E.2d 1184, 1188 (1995).
  

During the first tax period, March 1991 through January 1992, plaintiff was an investor in the Corporation, as well as the chairman of its board.  However, he was uninvolved in the day-to-day business of the Corporation and signed only two checks during this period.  
Plaintiff seldom visited the corporate site
 and never prepared, signed or filed the retailers' occupation tax returns during either tax period.  
Branson
, 168 Ill. 2d at 255, 659 N.E.2d at 965
.  We find that defendant's determination that plaintiff was a "responsible person" in the first tax period was clearly erroneous. 
 
Therefore, we affirm the decision of the circuit court holding that plaintiff was not a "responsible person" within the meaning of the ROTA for the first period.  

During the second tax period, which was February to April 1992,
 Umans told plaintiff of the Corporation's financial troubles, and plaintiff became involved in discussions with Canac in February 1992 to save the Corporation's distributorship agreement.  Plaintiff also signed checks to creditors and payroll checks during the months of February, March and April 1992.  
Although plaintiff did not participate in the preparation, signing or filing of retailers' occupation taxes, he was significantly more involved in the day-to-day business of the Corporation and knew of the Corporation's financial troubles.  At this point he was no longer merely an investor in the Corporation
 but became a responsible person.  
Branson
, 168 Ill. 2d at 255, 659 N.E.2d at 965
.  
The defendant's determination that plaintiff was a "responsible person" in the second tax period was not clearly erroneous. 
 
We, therefore, affirm the decision of the circuit court holding that plaintiff was a "responsible person" within the meaning of ROTA for the second period.  

We next consider whether
 defendant's decision that plaintiff failed to present sufficient evidence to rebut the presumption that he "willfully" failed to pay the Corporation's taxes within the meaning of section 13½ of ROTA throughout both tax periods should be affirmed
.  

Questions of whether a taxpayer "willfully" failed to pay tax obligations under the Retailers' Occupation Tax Act present a mixed question of fact and law for which the appropriate standard of review is whether the finding is clearly erroneous.  
Estate of Young v. Department of Revenue
, 316 Ill. App. 3d 366, 375, 734 N.E.2d 945, 951-52 (2000).  

The Department of Revenue may establish a 
prima facie
 case of "willfulness" by submitting a certified record of tax penalty.  Once the 
prima facie
 case has been established, the burden rests on the taxpayer to establish through sufficient evidence that the nonpayment was not "willful."  
Estate of Young
, 316 Ill. App. 3d at 375, 734 N.E.2d at 952; 
Branson
, 168 Ill. 2d at 262, 659 N.E.2d at 968.  

Under Illinois law, if a responsible officer uses collected retailers' occupation taxes to pay other creditors of the corporation, while knowing that he or she was obligated to file the returns and remit the taxes, the "willful" element of section 13½ is satisfied.  
Branson
, 168 Ill. 2d at 259, 659 N.E.2d at 967
; 
Estate of Young
, 316 Ill. App. 3d at 378, 734 N.E.2d at 953.  
"A finding of willfulness under section 13½ does not require a showing of actual knowledge of nonpayment.  Reckless disregard for obvious or known risks will suffice. [Citation.]  If a responsible person in a position to easily discover nonpayment clearly ought to have known of a grave risk of nonpayment but did nothing, a finding of willfulness is justified."  
Estate of Young
, 316 Ill. App. 3d at 375, 734 N.E.2d at 952.  
A corporate officer who is responsible for filing retailers' occupation tax returns and remitting the collected taxes may not avoid personal liability for tax penalties for nonpayment of such taxes merely by delegating bookkeeping duties to third parties and failing to inspect corporate records or otherwise failing to keep informed of the status of retailers' occupation tax returns and payments.  See 
Branson
, 168 Ill. 2d at 267, 659 N.E.2d at 971.  

During the first tax period, plaintiff wrote only two checks and had not been involved in the day-to-day business of the Corporation.  Although he had access to the Corporation's books and tax returns, plaintiff was unaware of the Corporation's financial difficulties
 because of his lack of involvement in the day-to-day affairs of the Corporation. 
 Plaintiff was not a "responsible person" during this period and, therefore, cannot be found to have been
 "willful" and thus liable under ROTA.  
The defendant's determination that plaintiff willfully failed to pay the retailers' occupation tax in the first tax period was clearly erroneous, and w
e affirm the decision of the circuit court that plaintiff did not willfully fail to pay the retailers' occupation tax for the first period.  

However, during the second tax period plaintiff wrote numerous checks to creditors and the employee payroll while being aware of the Corporation's financial difficulties.  While plaintiff may not have been aware of the status of the Corporation's sales tax returns or the notice of tax deficiency, he did know that the Corporation was in financial trouble and continued to write checks, even if at the behest of Goldman.  Plaintiff cannot escape liability by delegating bookkeeping duties to third parties
 and failing to keep himself informed of the status of retailers' occupation tax returns and payments
.  
Branson
, 168 Ill. 2d at 267, 659 N.E.2d at 971.
  Not only did plaintiff write checks to creditors other than defendant, he was in a position to easily discover nonpayment of the tax and should have known of the grave risk of nonpayment, but did nothing.  
Branson
, 168 Ill. 2d at 259, 659 N.E.2d at 967
; 
Estate of Young
,
 316 Ill. App. 3d at 375, 378,
 734 N.E.2d at 952, 953
.  
The defendant's determination that plaintiff willfully failed to pay the retailers' occupation tax in the second tax period was not clearly erroneous, and t
he decision of the circuit court that plaintiff willfully failed to pay the retailers' occupation tax for the second period 
is affirmed.  

The next issue we consider is
 whether the circuit court lacked authority to approve an administrative bond in an amount less than that of the final assessment
.  

Plaintiff complied with section 12 of ROTA (Ill. Rev. Stat. 1991, ch. 120, par. 451),
 and obtained a bond for $256,814.91, the full amount of the tax and interest claimed in the final assessment.   Section 3-111(a)(9)
 of the Administrative Review Law
 (735 ILCS 5/3-111 (West 1998))
, prohibits the circuit court from approving an administrative bond in an amount that is less than the amount claimed in the
 final assessment
 as stated in section 12 of the ROTA.  The bond established by the defendant in its final assessment covered both tax periods and could not be reduced to reflect the trial court's reversal of defendant's final assessment for the first tax period without notice to and an opportunity to be heard by defendant.  735 ILCS 5/3-111(a)(9) (West 1998). 
 
The motion reducing the appeal bond to $75,000, while sufficient to cover the $70,874.72
 judgment, interest and costs, was granted in error.  Further, contrary to plaintiff's argument, there is no conflict between 
section 3-111(a)(9) (
735 ILCS 5/3-111(a)(9) (West 1998)
) and Supreme Court Rule 305(a) (155 Ill. 2d. R. 305(a)).  
We reverse the decision of the circuit court which modified the bond.  

We next consider whether
 the trial court erred in denying plaintiff credits toward reducing his alleged tax liability.  

Illinois courts have referred to section 6672 of the Internal Revenue Code of 1954 (26 U.S.C. §6672 (1982)), which also imposes personal liability on an officer who willfully fails to pay taxes to construe section 13½ of the Retailers' Occupation Tax Act.
 
 
Department of Revenue v. Joseph Bublick & Sons, Inc.
, 68 Ill. 2d 568, 576,
 369 N.E.2d 1279, 1283 (1977); 
Heartland Investments, Inc.
, 106 Ill. 2d at 29, 476 N.E.2d 413, 417-18
; 
Branson
, 168 Ill. 2d at 254, 659 N.E.2d at 965.  
We refer to that same section to determine the credit issue.  

"A section 6672 assessment *** 'imposes a direct and personal, as opposed to a vicarious liability on the person who is assessed' and although 'two or more persons may be jointly and severally liable under [section] 6672, the government is not entitled to more than one satisfaction of the tax liability owed to it.' "  
Aardema
, 291 Ill. App. 3d at 921
, 684 N.E.2d at 887, quoting 
Hartman v. United States
, 538 F.2d 1336, 1340 (8th Cir. 1976).  "Section 6672 does not prevent the government from collecting and retaining from each responsible person a full satisfaction; however, the government is entitled only to one full satisfaction of delinquent withholding taxes.  [Citations.) When the government collects more than one penalty, however, it must abate each responsible person's penalty upon satisfaction of the original corporate payroll tax liability."  
Aardema
, 291 Ill. App. 3d at 923,
 684 N.E.2d at 889.  

The lower court held that the judgment in favor of defendant in the amount of $70,874.72 as of May 1, 2000, plus statutory interest of $6.74 per day after May 1, 2000, would not be reduced by the amount paid by Umans because defendant applied the amounts collected from Umans to his older outstanding statutory liability.  The lower court properly held that plaintiff's judgment would not be reduced by Umans' payments on his own responsible person penalty.  Only upon full satisfaction of the Corporation's liability 
will defendant be mandated to abate Umans and plaintiff's penalty
.  
Aardema
, 291 Ill. App. 3d at 923,
 684 N.E.2d at 889.  
Therefore, we affirm the decision of the circuit court not to reduce the judgment against plaintiff by the amount paid by Umans.  

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.  

Affirmed in part and reversed in part; cause remanded.  

HARTMAN, P.J., and *BARTH, J., concur.  

*Justice Barth participated in the Rule 23 Order prior to his retirement on September 30, 2001.  Publication has been allowed.