# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cerone v. State of Illinois*, 2012 IL App (1st) 110214

---

| | |
|---|---|
| Appellate Court Caption | JACK P. CERONE, as Responsible Officer of Grand-Wood Enterprises, Inc., Taxpayer, Plaintiff-Appellant, v. THE STATE OF ILLINOIS; THE DEPARTMENT OF REVENUE, and BRIAN HAMER, Director of Revenue, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket No. 1-11-0214 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | February 28, 2012<br><br>June 15, 2012<br>June 26, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An administrative law judge's finding that plaintiff was personally liable for his restaurant's sales tax obligation and acted willfully in failing to pay the taxes was upheld, since he was a responsible officer and the fact that he relied on the manager and his accountants to pay the taxes did not excuse that responsibility. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-51032; the Hon. Elmer James Tolmaire III, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Law Office of Anthony Pinelli, of Chicago (Anthony Pinelli, of counsel), for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion. |
| | Justices Cunningham and Connors concurred in the judgment and opinion. |

## OPINION

¶ 1    The Illinois Department of Revenue (Department) issued a notice of penalty tax liability (NPL) for the period of January 2006 through September 2006, against plaintiff, Jack P. Cerone, the majority shareholder of Grand-Wood Enterprises, Inc. (Grand-Wood), in connection with Grand-Wood's unpaid taxes, penalties, and interest under section 3-7(a) of the Uniform Penalty and Interest Act (35 ILCS 735/3-7(a) (West 2008)). The Department found that plaintiff was personally liable in the amount of $49,577.86 in penalties and interest for that nine-month period. Plaintiff protested the NPL, and an evidentiary hearing was held before an administrative law judge (ALJ) on March 12, 2009, with plaintiff appearing as the only witness. The ALJ subsequently prepared a recommendation for disposition, finding that plaintiff failed to rebut the Department's presumption that he willfully failed to pay Grand-Wood's sales taxes. The Department accepted the ALJ's recommendation and issued a final assessment against plaintiff for $52,809.97. On administrative review, the circuit court entered a memorandum of decision and judgment affirming the decision of the ALJ. Plaintiff filed a timely appeal. For the reasons set forth below, we affirm.

¶ 2                                     I. Background

¶ 3    Grand-Wood was a corporation that owned and operated an Italian restaurant on West Grand Avenue in Chicago, Illinois. At the evidentiary hearing, plaintiff testified that in 1997 he purchased a 25% stake in the restaurant, which at that time was named Colucci's. About a year later, plaintiff purchased the remaining shares from the restaurant's managing partner, George Colucci, and renamed the restaurant II Jack's Restaurant. Plaintiff's son, John Cerone, who had been the manager of Colucci's, was retained in that position and became a shareholder and corporate officer of the restaurant. In 2004 or 2005, John Cerone resigned, and Jerry Villa, who had been an assistant manager, was promoted to manager and given a

25% ownership interest in the restaurant. Villa's duties included hiring and firing, purchasing, paying bills and rent, selecting purveyors, and paying taxes. Plaintiff stated that his role at the restaurant was primarily to generate business by bringing clients in for meals and that he played no role in ordering products, paying vendors, or paying taxes for the restaurant.

¶ 4      Plaintiff testified that in September 2006, he went to the restaurant on a Sunday morning, when the restaurant was closed, to meet some friends. Plaintiff found the restaurant in disarray and could not locate Villa. He tried unsuccessfully to reach Villa by phone, and later that morning, a restaurant employee found Villa's home abandoned. Plaintiff said that he never saw Villa again but had heard that Villa had moved to Texas. The plaintiff went into the restaurant's office and found cardboard boxes full of unopened envelopes 6 to 12 months old from banks, purveyors, the Internal Revenue Service, and the State. He turned over the boxes to his accounting firm, Kolnicki, Peterson, and Wirth, whose services plaintiff had retained from 1997 through 2006.

¶ 5      Plaintiff testified that his lease on the property expired on September 30, 2006, and that although he had been negotiating a renewal of the lease, he decided instead to close the restaurant immediately because there were no funds available to keep it in operation. Plaintiff said that the Kolnicki accounting firm prepared and filed Grand-Wood's final tax return for 2006. He further stated that during the term of his ownership of the restaurant there were no corporate profits, he never took a paycheck, and he did not receive a distribution when the restaurant closed.

¶ 6      On cross-examination, the Department introduced into evidence an "ST-15, Business Information Update (Sales and Use Tax)" form for II Jack's Italian Restaurant listing plaintiff as the person responsible for filing sales and use tax returns and paying taxes. Plaintiff's signature appears under the following statement: "I accept personal responsibility for the filing of returns and the payment of taxes due." The form is dated September 1, 2003, and includes plaintiff's social security number. Plaintiff denied that the signature was his, though he acknowledged that it was his social security number, and stated that he had never seen the form before.

¶ 7      Plaintiff also stated on cross-examination that he was an authorized check signer for the restaurant and signed checks on occasion for payroll or other reasons. He said that he would go to the restaurant once a week for lunch and twice a week for dinner and frequently met clients there. He would sometimes talk "restaurant affairs" with Villa but not financial information about the restaurant. He said that he did not inspect business books or records while at the restaurant, but at the end of each year he received a schedule K-1 tax form for the restaurant, which contained "various financial information about the business." Plaintiff acknowledged that he was aware that for the entire time he owned the restaurant it was losing money and that before Villa became the manager, plaintiff made capital contributions to buy new equipment and to change the decor. He stated that in 2006, some suppliers put the restaurant on a cash on delivery payment system, which he said happens when "you are not paying your bills in a timely fashion." Plaintiff did not discuss this issue with Villa or get involved in any decisions about which vendors to pay but left it up to Villa's discretion. He also never made specific inquiries of Villa as to whether the taxes were being paid.

¶ 8        After the hearing, the ALJ entered a recommendation for a disposition finding that, pursuant to section 3-7 of the Uniform Penalty and Interest Act (35 ILCS 735/3-7 (West 2008)), plaintiff was a responsible officer who knew or should have known whether returns were filed and taxes paid, and that he willfully failed to pay the tax by not taking action in light of the restaurant's losses and cash flow problems. On administrative review, the circuit court entered a memorandum of decision and judgment affirming the ALJ's decision. Plaintiff filed a timely appeal, arguing that the Department failed to prove that he was a responsible officer of Grand-Wood or that he acted willfully in failing to pay Grand-Wood's sales tax.

¶ 9                                    II. ANALYSIS
¶ 10                               A. Standard of Review
¶ 11        Before addressing the merits of plaintiff's argument, we first address the applicable standard of review. Our supreme court has held that in administrative cases, such as this one, the appellate court reviews the decision of the administrative agency, not the determination of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009). In reviewing the decision of the administrative agency, " '[t]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law.' " *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008) (quoting *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005)). An administrative agency's findings on questions of fact are deemed to be *prima facie* true and correct. 735 ILCS 5/3-110 (West 2008). In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. *Cinkus*, 228 Ill. 2d at 210. Rather, the reviewing court is limited to ascertaining whether the agency's factual findings are contrary to the manifest weight of the evidence. See *Cinkus*, 228 Ill. 2d at 210; see also *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 736 (2001) ("[T]he decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident."). An agency's conclusions of law, however, are not entitled to the same deference, and we review them *de novo. Illinois Fraternal Order of Police Labor Council*, 319 Ill. App. 3d at 736.

¶ 12        If the question presented for review is one of mixed law and fact, then yet a third standard applies, and we review the agency's decision to determine if it was clearly erroneous. *American Federation of State, County & Municipal Employees, Council 31*, 216 Ill. 2d at 577. Mixed questions of fact and law " 'are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." ' " *Cinkus*, 228 Ill. 2d at 211 (quoting *American Federation of State, County & Municipal Employees, Council 31*, 216 Ill. 2d at 577, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). An administrative decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that

a mistake has been committed. *Exelon Corp.*, 234 Ill. 2d at 273.

¶ 13    In the present case, plaintiff and the Department agree that the Director's determination that plaintiff was a responsible officer who willfully failed to pay taxes is a mixed question of law and fact and that therefore the clearly erroneous standard should apply. *McLean v. Department of Revenue*, 326 Ill. App. 3d 667, 675 (2001).

¶ 14    Turning to the merits, we begin our analysis by addressing the relevant statutory provisions. Pursuant to the Retailers' Occupation Tax Act, Illinois retailers are required to remit to the State a percentage of the gross receipts of every retail sale of tangible personal property. 35 ILCS 120/2 (West 2008). When a corporation incurs tax liability under the Retailers' Occupation Tax Act but fails to remit those funds to the Department, a responsible officer or employee of the corporation may be held liable for its unpaid tax liability, plus penalties, and interest. *McLean v. Department of Revenue*, 326 Ill. App. 3d at 673-74. Section 3-7(a) of the Uniform Penalty and Interest Act provides, in part, as follows:

> "Any officer or employee of any taxpayer subject to the provisions of a tax Act administered by the Department who has the control, supervision or responsibility of filing returns and making payment of the amount of any trust tax imposed in accordance with that Act and who wilfully fails to file the return or make the payment to the Department or wilfully attempts in any other manner to evade or defeat the tax shall be personally liable for a penalty equal to the total amount of tax unpaid by the taxpayer including interest and penalties thereon." 35 ILCS 735/3-7(a) (West 2008).

¶ 15    Pursuant to the language of the statute, "[p]ersonal liability for a retail corporation's unpaid retailers' occupation taxes, which survives dissolution of the corporation, may be imposed only upon corporate officers or employees who are responsible for the filing of retailers' occupation tax returns and payment of taxes due, and who have 'willfully' failed to file such returns or remit such taxes." *McLean*, 326 Ill. App. 3d at 674 (citing *Branson v. Department of Revenue*, 168 Ill. 2d 247, 255 (1995)). "Persons who are required to collect, truthfully account for, and pay over any tax are referred to as 'responsible persons.' " *McLean*, 326 Ill. App. 3d at 674 (quoting *Aardema v. Fitch*, 291 Ill. App. 3d 917, 920 (1997)). After the Department presents a *prima facie* claim for tax penalty liability for nonpayment of retailers' occupation tax, the burden shifts to the taxpayer to establish either that he was not a responsible officer or that his failure to pay the tax was not willful. *McLean*, 326 Ill. App. 3d at 674 (citing *Branson*, 168 Ill. 2d at 261).

¶ 16                    B. Plaintiff as a "Responsible Officer"

¶ 17    Plaintiff first contends that the ALJ's finding that he was a responsible officer of Grand-Wood was clearly erroneous because he was the only witness to testify at the administrative hearing and no contradictory evidence or rebuttal was offered in opposition to his testimony that he did not control, supervise, or exercise responsible authority over the payment of taxes. For support, plaintiff relies on *Sweilem v. Department of Revenue*, 372 Ill. App. 3d 475 (2007), wherein the appellate court stated that, "Our supreme court has clearly indicated that in Illinois a finder of fact may not simply reject unrebutted testimony. *** [A] fact finder may not discount witness testimony unless it was impeached, contradicted by positive

circumstances, or found to be inherently improbable." *Sweilem*, 372 Ill. App. 3d at 485 (citing *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346, 353-55 (1983)). Plaintiff contends that because there were no other witnesses to contradict his testimony and because he was not impeached, the ALJ erred in finding that he was a responsible officer and this court should reverse that finding. We disagree.

¶ 18     First, although plaintiff was the only witness to testify at the evidentiary hearing, that does not mean that the Department presented no evidence to rebut his testimony. During cross-examination, the Department entered into evidence an ST-15 form, with plaintiff's signature and social security number, affirming that he was personally liable for filing the sales tax return and paying the sales tax. Plaintiff denied that the signature on the form was his or that he had ever seen it before, but he offered no evidence to corroborate this assertion, such as a handwriting sample or testimony as to who may have forged his signature. The credibility of witnesses and the weight to be accorded their testimony are typically considerations for the trier of fact. *Sweilem*, 372 Ill. App. 3d at 485. Here, the ALJ considered the evidence and the testimony and found that he was unable to conclude that the signature on the form was not plaintiff's. This finding of fact was not contrary to the manifest weight of the evidence, since the opposite conclusion, that the signature was forged by someone else, is not clearly evident.

¶ 19     Further, the evidence presented at the hearing showed that plaintiff had significant control and authority over the restaurant's business affairs and was aware of its financial difficulties, which further supports the ALJ's finding that he was a responsible officer. Although plaintiff tried to minimize his involvement in the restaurant, his testimony showed that he held a 75% interest in Grand-Wood, visited the restaurant several times a week, and spoke with the manager, Villa, about restaurant affairs. He had authority to sign checks on behalf of the corporation and participated in several key decisions for the restaurant, including the hiring and retention of an accounting firm, the promotion of Villa to manager, and the negotiations for a new lease. Plaintiff testified that he was aware that in 2006 some suppliers put the restaurant on a cash on delivery payment system, which he said happens when "you are not paying your bills in a timely fashion." Therefore, he was aware of the financial difficulties facing the restaurant and had the authority to allocate the corporation's financial obligations. Although plaintiff asserts that he had no control over the payment of taxes, a person need not have participated in the preparation, signing, or filing of retailers' occupation tax returns in order to be deemed a "responsible person" under the statute. *McLean*, 326 Ill. App. 3d at 675. Here, the evidence presented at the hearing showed that plaintiff had significant control and authority over the restaurant's business affairs and was aware of its financial difficulties. Based on this evidence, as well as plaintiff's own affirmation on the ST-15 form of his personal responsibility to pay taxes due, we conclude that the ALJ's finding that plaintiff was a responsible officer of Grand-Wood was not clearly erroneous.

¶ 20                                C. Willful Failure to Pay Taxes

¶ 21     Plaintiff also contends that the ALJ's finding that he acted willfully in failing to pay the

retailers's occupation taxes for Grand-Wood was clearly erroneous because the Department failed to present evidence to rebut his testimony that he did not know that taxes were owed. Further, plaintiff argues that the ALJ improperly extended the definition of willfulness beyond that permitted by the statute, by finding that plaintiff was liable because he "should" have known that they were owed and "could" have paid them. Plaintiff asserts that absent evidence that he voluntarily, consciously, and intentionally failed to pay the tax, this court should reverse the ALJ's finding.

¶ 22    The Department may establish a *prima facie* case of "willfulness" by submitting a certified record of tax penalty. *McLean*, 326 Ill. App. 3d at 675. Once the *prima facie* case has been established, the burden rests on the taxpayer to establish through sufficient evidence that the nonpayment was not "willful." *Id.* Willful conduct does not require bad purpose or intent to defraud the government. *Branson*, 168 Ill. 2d at 255 (quoting *Department of Revenue v. Heartland Investments, Inc.*, 106 Ill. 2d 19, 29-30 (1985)). Nor does it require a showing of actual knowledge of nonpayment. *McLean*, 326 Ill. App. 3d at 675. " '[W]illful failure to pay taxes has generally been defined as involving intentional, knowing and voluntary acts or, alternatively, reckless disregard for obvious or known risks.' " *Branson*, 168 Ill. 2d at 255 (quoting *Heartland Investments, Inc.*, 106 Ill. 2d at 29-30). "If a responsible person in a position to easily discover nonpayment clearly ought to have known of a grave risk of nonpayment but did nothing, a finding of willfulness is justified." (Internal quotation marks omitted.) *McLean*, 326 Ill. App. 3d at 676. Further, "[a] corporate officer who is responsible for filing retailers' occupation tax returns and remitting the collected taxes may not avoid personal liability for tax penalties for nonpayment of such taxes merely by delegating bookkeeping duties to third parties and failing to inspect corporate records or otherwise failing to keep informed of the status of retailers' occupation tax returns and payments." *McLean*, 326 Ill. App. 3d at 676.

¶ 23    In this case, the ALJ's finding that plaintiff willfully failed to pay the retailers' occupation tax of Grand-Wood was not clearly erroneous. Plaintiff was a 75% shareholder and president of Grand-Wood. He was, therefore, in a position to inspect the corporation's books and determine whether taxes had been paid. He also had check-writing authority and could have used it to ensure that the taxes were being paid. Alternatively, he could have inquired with Villa or his accountants to determine if the taxes were paid. Indeed, once he learned that the business was having problems paying its bills and was put on a cash on delivery payment system by some suppliers, he ought to have known of the risk that the taxes were not being paid. See *Estate of Young v. Department of Revenue*, 316 Ill. App. 3d 366, 377 (2000) (though corporation had system for paying taxes, responsible officer should have known of grave risk that taxes were not being paid where he knew business was in serious financial difficulty and bills were going unpaid). Plaintiff was at the restaurant several times a week and knew that Grand-Wood's corporate records were kept at the restaurant, yet despite his knowledge about the restaurant's financial problems, he made no inquiry as to the status of the tax payments. As the ALJ noted, the testimony and documentary evidence do not show "any positive steps" to pay the taxes. His failure to take action despite his knowledge of the restaurant's financial difficulties is sufficient to find that he recklessly disregarded obvious or known risks and, therefore, acted willfully in failing to pay the taxes.

¶ 24 Plaintiff contends that he put into effect a system whereby the restaurant's manager and his accountants ensured that the taxes were paid, that the system had worked for more than 10 years, that he was entitled to rely on it, and therefore, cannot be deemed to have willfully failed to pay the taxes. While it may be reasonable to rely on such a system for paying taxes, once it becomes common knowledge that a corporation is in serious financial difficulty and that bills are going unpaid, a responsible party is on notice and has a duty at that time to ensure that retailers' occupation taxes have been filed and the taxes paid. *Estate of Young*, 316 Ill. App. 3d at 376-77. Here, as plaintiff acknowledged, he was aware that the restaurant was facing serious financial difficulties and could not pay some of its bills. At that point, plaintiff could no longer simply rely on a system that had worked in the past but had a duty to ensure that the taxes were being filed and paid. He did not do so, and therefore, failed to rebut the presumption of willfulness.

¶ 25 Lastly, we disagree with plaintiff's contention that the ALJ's decision in this case expands liability beyond that permitted by the statute by effectively imposing liability on every shareholder or majority owner of a corporation who "could" or "should" have known of a tax liability, merely based on that party's status. Clearly, such liability is not contemplated by the statute or Illinois' courts interpretations of it and such liability was not imposed in this case. Plaintiff, as a responsible corporate officer, knew of Grand-Wood's financial problems, which put him on notice that the taxes might not have been paid. However, he failed to take any steps to determine whether the taxes were being paid by asking Villa or his accountants or by checking the corporate records. It was his failure to take any of these steps, and not his status as majority shareholder, alone, that made him personally liable for Grand-Wood's tax deficiency.

¶ 26                                III. CONCLUSION

¶ 27 Therefore, because we conclude that the ALJ's finding that plaintiff was personally liable for Grand-Wood's unpaid retailers' occupation tax obligation and acted willfully in failing to pay it, we affirm the circuit court.

¶ 28 Affirmed.