# Illinois Official Reports

## Appellate Court

---

**Kazmi v. Department of Financial & Professional Regulation,**
**2014 IL App (1st) 130959**

---

| | |
|---|---|
| Appellate Court Caption | SYED KAZMI, Plaintiff-Appellee, v. THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION and JAY STEWART, Director of the Division of Professional Regulation of the Department of Financial and Professional Regulation, Defendants-Appellants. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0959 |
| Filed | September 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the Department of Financial and Professional Regulation revoked plaintiff's medical license for making false statements in his application for his license and for the discipline he received from a sister state for false statements made in his application for licensure there, but through the appeal process, plaintiff eventually obtained an order from the trial court affirming the indefinite suspension of his license for a minimum of nine months the appellate court, pursuant to the Department's appeal, reversed the trial court's order reducing the minimum period of the suspension to nine months and confirmed the Department's initial order revoking plaintiff's license based on his deliberate misrepresentation of his professional credentials and employment history. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-33985; the Hon. Mary L. Mikva, Judge, presiding. |
| Judgment | Circuit court reversed. Administrative decision confirmed. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Paul Racette, Assistant Attorney General, of counsel), for appellants. |
|---|---|
| | Edward W. Williams, Ltd., of Chicago (Edward W. Williams and Fred Nickl, of counsel), for appellee. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Hyman concurred in the judgment and opinion. |

**OPINION**

Defendants-appellants, the Illinois Department of Financial and Professional Regulation (Department) and Jay Stewart, Division Director for the Division of Professional Regulation, appeal from an order of the circuit court of Cook County affirming a decision of the Department indefinitely suspending the medical license of Dr. Syed Kazmi for a minimum of nine months. Prior to this decision, the Department revoked Dr. Kazmi's license for violations of the Medical Practice Act of 1987 (225 ILCS 60/22(A) (West 2010)), resulting from false statements made in his application for his medical license, and discipline he received from a sister state for making false statements on an application for licensure there. The circuit court reversed the Department's initial revocation, deeming it to be too harsh in light of mitigating circumstances. Two subsequent suspensions, of progressively shorter periods, were similarly deemed too harsh by the circuit court before the nine-month suspension was affirmed.

The Department claims that the revocation of Dr. Kazmi's license was not an abuse of discretion given the nature of Dr. Kazmi's violations. We agree and reverse the order of the circuit court and confirm the Department's original revocation order.

BACKGROUND

Dr. Kazmi graduated from Ross University School of Medicine, located on the island nation of Dominica, in 2000. After graduation, he participated in a residency at Grand Rapids Medical Education and Research Center in Grand Rapids, Michigan. He was not awarded credit for this residency because his performance was deficient in several areas, including the failure of an in-service examination and because of his conduct in self-prescribing medication. The following year, he participated in a residency at Thomas Jefferson University in Pennsylvania for two months, from July 2001 to August 2001, but was asked to leave because the university learned that he had not received credit from his first-year residency, which was a prerequisite. Dr. Kazmi claims that he was unaware that he received no credit for his first-year residency prior to being informed by the administration at Thomas Jefferson.

¶ 5    In July 2002, Dr. Kazmi was accepted to a residency at the University of Wisconsin at Wausau. On his application for this residency, Dr. Kazmi omitted his two prior residencies. He withdrew from this residency prior to its commencement.

¶ 6    Dr. Kazmi next secured a residency at Deaconess Hospital in Indiana from July 2003 to July 2004. This time, Dr. Kazmi omitted all three prior residencies on his application. Over the course of residency at Deaconess Hospital, Dr. Kazmi failed the in-service examination, was placed on academic probation, was suspended for writing prescriptions to his wife, and was excluded from Medicare for failure to pay his student loans. Dr. Kazmi was terminated from this residency program before its completion.

¶ 7    Beginning in 2004, Dr. Kazmi participated in and completed a residency at Jackson Park Hospital in Chicago, Illinois. On his application for the Jackson Park residency, he once again omitted all of his prior residencies. As part of this residency, he filed an application with the Department for a temporary Illinois medical license. He certified, under penalty of perjury, that his application was correct and complete, but he again omitted the past residencies. Dr. Kazmi also fabricated an employment history to account for the time he was engaged in the previous failed residencies.

¶ 8    In August 2007, Dr. Kazmi applied for a permanent medical license in Illinois. He omitted all but his Jackson Park Hospital residency and again included his fabricated employment history. Dr. Kazmi admits that he made these misrepresentations because he believed that if he did not, he would have been denied a license. Dr. Kazmi was granted a permanent Illinois medical license. At that time, he also applied for a license in Ohio.

¶ 9    After receiving his license, Dr. Kazmi began working in Illinois as an emergency room physician, first in Mount Vernon, Illinois, and later at various locations throughout the state with Sims ECI. On October 8, 2008, the State Medical Board of Ohio notified Dr. Kazmi that it proposed to deny his application for licensure in that state. The Ohio Board's determination was based on findings that Dr. Kazmi had made 22 false statements between 2001 through 2008 in an attempt to conceal his poor track record in his residencies. Dr. Kazmi did not notify Sims ECI of his pending discipline. He claims that he did not believe giving notification to his employer was expected of him.

¶ 10    Sims ECI did learn of the pending denial of licensure in Ohio, and, as a result, terminated Dr. Kazmi in January 2009. In September of that year, the State Medical Board of Ohio permanently denied Dr. Kazmi's application for a medical license.

¶ 11    In February 2010, the Department filed an administrative complaint against Dr. Kazmi alleging violations of the Medical Practice Act in regard to the permanent denial of his application in Ohio and the misrepresentations and omissions contained in his applications for licensure in Illinois. In April 2010, Dr. Kazmi applied for, and was accepted to, a position at Massac Memorial Hospital in Metropolis, Illinois. Given the denial of his application by the State Medical Board of Ohio, Dr. Kazmi disclosed the true facts regarding his medical career to Massac Memorial's administration before he was hired. But Dr. Kazmi still did not disclose that he had prescribed controlled substances for his wife, a fact one of his character witnesses learned only while testifying at the administrative hearing.

¶ 12    On March 31, 2011, an administrative law judge (ALJ) for the Department conducted an evidentiary hearing. Based on the evidence summarized above, the ALJ recommended that Dr. Kazmi's license be revoked. Dr. Kazmi filed a timely motion for rehearing, which the Division

Director denied. On September 8, 2011, the Division Director issued a final order, following the Department's recommendation, and revoked Dr. Kazmi's license.

¶ 13    On September 29, 2011, Dr. Kazmi appealed the revocation to the circuit court. The court held, on July 16, 2012, that the punishment was overly severe and remanded the matter to the Department to reconsider the discipline. In August 2012, the Department issued an order suspending Dr. Kazmi's license indefinitely for a minimum of three years. It did so while reserving the right to appeal the circuit court's reversal of the original order of revocation. Dr. Kazmi again filed a motion asking that this new order be reversed because he believed it was too harsh. On September 26, 2012, the court reversed the Department's indefinite three-year suspension and again remanded the matter to the Department to reconsider the severity of the discipline.

¶ 14    In October 2012, the Department issued an order indefinitely suspending Dr. Kazmi's license for a minimum of 19 months, again reserving the right to appeal the reversal of both prior discipline orders. Once again, Dr. Kazmi filed a motion asking that this reduced suspension be reversed because it was overly severe, and on November 3, 2012, the court again reversed and remanded the matter to the Department to reconsider.

¶ 15    In January 2013, the Department issued an order indefinitely suspending Dr. Kazmi's license for a minimum of nine months, again reserving the right to appeal all of the prior orders. On February 15, 2013, the circuit court entered a final order, concluding that the Department's order should be affirmed.

¶ 16    On March 18, 2013, the Department appealed from all three of the circuit court's orders directing reconsideration of the revocation of Dr. Kazmi's license.

¶ 17                                                        ANALYSIS

¶ 18    In administrative review cases, we review the decision of the administrative agency, not the decision of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009); *Cerone v. State*, 2012 IL App (1st) 110214, ¶ 11. "[T]he applicable standard of review depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law." (Internal quotation marks omitted.) *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 19    An agency's conclusions of law are reviewed *de novo*. *Id.* at 211. If the appeal involves a statute the agency is charged with administering, courts accord some deference to the agency's interpretation. *Swank v. Department of Revenue*, 336 Ill. App. 3d 851, 855 (2003); *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 394 (2001).

¶ 20    If the issue presented involves a mixed question of fact and law, we review the agency's decision to determine whether it is "clearly erroneous." *Cerone*, 2012 IL App (1st) 110214, ¶ 12. Mixed questions of fact and law involve "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." (Internal quotation marks omitted.) *Id.*; see also *AFM Messenger Service, Inc.*, 198 Ill. 2d at 391 (mixed question of fact and law is one involving an examination of legal effect of a given set of facts). An administrative decision is clearly erroneous only when the reviewing court is " 'left with the definite and firm conviction that a

mistake had been committed.' " *Id.* at 395 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

¶ 21 Even if the administrative decision is determined to be correct under the foregoing standards of review, the discipline imposed by the agency may still be reversed if it is found to constitute an abuse of discretion. *Gruwell v. Department of Financial & Professional Regulation*, 406 Ill. App. 3d 283, 295 (2010). A sanction will be found to be an abuse of discretion if it is arbitrary and capricious, or if the sanction is overly harsh in view of the mitigating circumstances. *Southern Illinois Asphalt Co. v. Pollution Control Board*, 60 Ill. 2d 204, 207 (1975); *Citrano v. Department of Registration & Education*, 90 Ill. App. 3d 937, 939 (1980).

¶ 22 In this case, because the evidence of Dr. Kazmi's misrepresentations and omissions is undisputed, we use the clearly erroneous standard to review the ALJ's findings of fact and law. We will further consider whether the decision to revoke Dr. Kazmi's license constitutes an abuse of discretion.

¶ 23 It is undisputed that Dr. Kazmi made numerous misrepresentations in his temporary and permanent applications for an Illinois medical license. He failed to disclose residencies that he did not complete and omitted the disciplinary and performance issues that arose during those residencies. In addition, it is undisputed that Dr. Kazmi included fictitious employment on his applications for temporary and permanent licensure. In each of these applications, he certified, under penalty of perjury, that the information he provided was correct and complete. It is also undisputed that, based on these misrepresentations and omissions, the state of Ohio has permanently barred Dr. Kazmi from obtaining a medical license.

¶ 24 Misrepresentation in applying for licensure and discipline by another state are both violations under the Medical Practice Act. 225 ILCS 60/22(A)(9), (A)(12) (West 2010) (grounds for disciplinary action include "[f]raud or misrepresentation in applying for, or procuring, a license under this Act" and "[d]isciplinary action of another state or jurisdiction against a license or other authorization to practice as a medical doctor"). The Medical Practice Act allows for the Department to revoke, suspend, or take any other disciplinary action it deems proper for such violations. 225 ILCS 60/22(A) (West 2010).

¶ 25 Dr. Kazmi concedes that his violations warrant discipline, but contends that the Department's initial order revoking his medical license was unwarranted and disproportionate to his infractions. We disagree.

¶ 26 Dr. Kazmi claims that the revocation of his license is too harsh because his transgressions did not threaten patient safety or welfare. He argues that the discipline does not further the Medical Practice Act's goal of protecting the public health and welfare from those unqualified to practice medicine, and, therefore, the revocation is arbitrary.

¶ 27 To support this position, Dr. Kazmi cites *Citrano v. Department of Registration & Education*, 90 Ill. App. 3d 937 (1980). In *Citrano*, this court considered whether the revocation of a barber's license, resulting from false statements on the application, was overly harsh. Citrano had been a barber for 17 years, in Italy and England, before coming to Chicago. *Id.* at 938. While looking for work in a barbershop, he was told by a shop owner that he would need a license. *Id.* Another barber offered to assist Citrano in obtaining his license by filling out the application for him and including references from people who neither knew Citrano nor agreed to be listed as a reference. *Id.* This court held that, considering Citrano's professional skills

both at the time of his application and at the time of the administrative hearing, revocation of his license was too harsh. *Id.* at 940.

¶ 28    The reasoning of *Citrano* is inapplicable here, first and foremost because of the pivotal role that the licensing of doctors plays in safeguarding the public health. The same cannot be said of barbers. *Citrano* is further distinguishable because the appellant in that case was, in fact, qualified to obtain a barber's license, while Dr. Kazmi was not qualified to obtain a medical license. In fact, Dr. Kazmi's concern over his inability to obtain a medical license is the precise reason why he chose to misrepresent himself in the applications for temporary and permanent Illinois medical licenses. Dr. Kazmi failed examinations in more than one residency, prescribed medication to himself and his wife, and failed, or otherwise did not complete, three residencies. He fabricated an employment history to fill in the gaps in his resume. This critical information was either withheld or affirmatively misrepresented on Dr. Kazmi's applications. Had Dr. Kazmi been truthful in his applications, he never would have obtained either the residency at Jackson Park Hospital or an Illinois medical license.

¶ 29    Unlike the barber in *Citrano*, who had an unblemished record save for his fictional references, the record here reveals a sustained pattern of fraudulent conduct by Dr. Kazmi designed to conceal subpar performance and questionable conduct in connection with three residencies he was unable to successfully complete. Although Dr. Kazmi claims he admitted all of his misrepresentations to the administration at Massac Memorial Hospital, Ronald Martin, Massac's vice-chairman of the board, who was a character witness for Dr. Kazmi at his administrative hearing, was unaware that Dr. Kazmi had prescribed medication to his wife. Dr. Kazmi's attempt to analogize his misconduct with that of the barber in *Citrano* must fail.

¶ 30    Furthermore, the information that Dr. Kazmi did disclose to Massac Memorial was only offered after Ohio permanently denied his application for a medical license. By that time, even Dr. Kazmi must have realized he could not perpetuate his falsehoods indefinitely. Thus, we view Dr. Kazmi's revelations to Massac Memorial as prompted more by necessity than a desire to finally come clean.

¶ 31    We find Dr. Kazmi's circumstances more analogous to the circumstances considered by our supreme court in *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76 (1992). In *Abrahamson*, our supreme court considered whether the denial of a medical license resulting from misrepresentations and omissions on an application was overly severe. Abrahamson, an applicant for an Illinois medical license, falsified educational history, including the addition of an undergraduate degree that he did not receive and the omission of a medical school where he took classes. *Id*. at 96. Abrahamson also claimed to have never been denied a license in any other state, even though he had been denied licensure in Indiana, Pennsylvania, and South Dakota. *Id.* As a result of these misrepresentations and omissions, the Illinois Medical Licensing Board denied Abrahamson licensure. *Id.* at 87. On administrative review, the trial court overturned this decision because, among other reasons, it considered denial of licensure too severe a sanction. *Id.* This determination was upheld on appeal.

¶ 32    Reversing, our supreme court held that denial of licensure was appropriate. *Id.* The court recognized that a reviewing court should defer to an administrative agency's expertise in determining what sanction is appropriate. *Id.* at 99. In Abrahamson's case, the administrative agency determined that Abrahamson did not satisfy the requirements for a medical license, and this conclusion was supported by the misrepresentations and omissions on his application

materials. *Id.* Since Abrahamson was not entitled to licensure, the court reasoned, the denial of his application for a license could not be said to be overly severe. *Id.* at 99-100.

¶ 33 The same reasoning applies here. Dr. Kazmi's misrepresentations and omissions were material, as without them he would never have received a medical license. It cannot be said, then, that revoking his license is too harsh a sanction because had he disclosed the truth on his application, a license would never have issued. If the Department can deny an application for failure to meet the requirements for licensure, then the Department must be able to revoke a license obtained by means of deliberate misrepresentation of an applicant's qualifications.

¶ 34 We also find Dr. Kazmi's circumstances similar to those considered by our supreme court in *In re Mitan*, 75 Ill. 2d 118 (1979). In *Mitan*, an attorney deliberately omitted and falsely stated information on a sworn questionnaire, as part of his application for admission to the Illinois bar. *Id.* at 122. Among other things, Mitan failed to disclose other law schools he had attended, his correct birth date, a prior marriage, his involvement in several civil suits, and a criminal conviction. *Id.* at 122-23. These same omissions and false statements were repeated in a supplemental questionnaire, two years later. *Id.* at 122. Our supreme court determined that Mitan's false and deceptive answers in his application were grounds for disbarment. *Id.* at 127. The court recognized that the truth regarding Mitan's criminal conviction might not necessarily have precluded him from obtaining a license to practice law, but this omission, coupled with the other misrepresentations and omissions, frustrated any meaningful examination of Mitan's fitness to practice law. *Id.* at 126.

¶ 35 The same can be said here. Even if we assume that Dr. Kazmi's three failed residencies would not have forever barred him from obtaining an Illinois medical license, his failure to disclose his past and his affirmative misrepresentations of his employment history prevented any meaningful assessment of Dr. Kazmi's fitness to practice medicine. Thus, the Department correctly concluded that Dr. Kazmi's behavior warranted the most serious sanction.

¶ 36 Dr. Kazmi cites mitigating factors, which he claims were not appropriately weighed, as a basis for suspension, as opposed to revocation of his license. Deference to the decision of the administrative agency extends to the weight it places on mitigating factors. *Abrahamson*, 153 Ill. 2d at 99. None of the mitigating factors suggested by Dr. Kazmi are so compelling, in our view, as to render revocation overly harsh.

¶ 37 Dr. Kazmi first argues that he has accepted responsibility for his actions. But as we have observed above, the circumstances attending Dr. Kazmi's disclosure of his past calls into question whether it was motivated by a genuine change of heart or the realization that he could no longer conceal the true facts.

¶ 38 Dr. Kazmi next argues that he is a competent doctor. But this alone cannot offset the seriousness of Dr. Kazmi's long-standing pattern of deceit. The fraud that Dr. Kazmi perpetrated in connection with his Illinois medical license application tainted the process from the outset. Any sanction short of revocation would allow Dr. Kazmi to benefit from his deliberate deception by retaining a license that he was never entitled to in the first place.

¶ 39 CONCLUSION

¶ 40 Dr. Kazmi chose to misrepresent his professional credentials and employment history in order to receive a medical license in Illinois. Had he been honest, he would not have received

the license. His pattern of deceit was long-standing and deliberate. It is therefore appropriate for his medical license to be revoked.

¶ 41       The February 15, 2012, order of the circuit court of Cook County affirming a nine-month suspension of Dr. Kazmi's medical license is reversed and the Department's September 8, 2011 order revoking that license is confirmed.

¶ 42       Circuit court reversed. Administrative decision confirmed.